**Zakia CARTER, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–1840.

United States Court of Appeals, First Circuit.

July 30, 1996.

————

Joseph S. Callahan, on brief, Fall River, MA, for petitioner.

Frank W. Hunger, Assistant Attorney General, Civil Division, and Philemina McNeill Jones, Assistant Director, Office of Immigration Litigation, United States Department of Justice, on brief, Washington, DC, for respondent.

Before SELYA and BOUDIN, Circuit Judges, and McAULIFFE,* District Judge.

SELYA, Circuit Judge.

Invoking the newly enacted "battered spouse" provision of the Immigration and Nationality Act (I & N Act), 8 U.S.C. § 1154(a)(1)(A)(iii) (1994), petitioner Zakia Carter seeks judicial review of an order of the Board of Immigration Appeals (the Board) denying her motion to reopen deportation proceedings. Discerning no cognizable error, we decline to grant the petition.

## I

Carter, a native and citizen of Morocco, was convicted of assault and battery on March 8, 1981. After the victim died, Carter pled guilty to a charge of manslaughter. The state court sentenced her to serve 12–20 years in prison. She was not released from the penitentiary until March 20, 1993.

The Immigration and Naturalization Service (INS) instituted deportation proceedings against petitioner on October 28, 1988 (while she was still incarcerated). In its order to show cause, the INS charged her inter alia with committing a crime involving moral turpitude (for which she was convicted and sentenced to a prison term of more than one year) within five years of her lawful entry into the United States, in violation of section 241(a)(2) of the I & N Act, 8 U.S.C. § 1251(a)(2).[1] Petitioner disputed this charge, denying that the crime she had committed involved moral turpitude.

On March 19, 1990, an immigration judge (IJ) found petitioner deportable. While her appeal to the Board was pending, petitioner, though still incarcerated, married Dale Carter (a native and citizen of the United States). Following her release, she gave birth to a child, Jamila Carter, on August 22, 1994. Six weeks thereafter, the Board affirmed the IJ's decision and entered a deportation order. See Matter of Carter, Interim Dec. No. 23–200–544 (BIA 1995).

Petitioner subsequently sought a divorce. She then filed a motion to reopen the deportation proceedings. Although the Board previously found petitioner deportable due to her manslaughter conviction, her motion asserts an entitlement to a waiver of excludability premised on her status as a battered spouse.[2] The Board denied her motion on July 12, 1995. Petitioner now seeks judicial review. At the present time, her divorce case is pending, as are certain domestic violence proceedings against her husband.

## II

We pause to emphasize the circumscribed nature of our review. The Board originally found Carter to be inadmissible (and, therefore, deportable) because she had committed a crime of moral turpitude (and served more than twelve months in prison) within five years of entering the United States. It denied her motion to reopen for a variety of reasons (most of which related to the absence of a prima facie showing of entitlement to relief).

■ We inquire only into the Board's denial of the motion to reopen, not its earlier adjudication of the merits of petitioner's ex-

---

* Of the District of New Hampshire, sitting by designation.

1. The statute reads in pertinent part:
Any alien who (I) is convicted of a crime involving moral turpitude committed within five years ... after the date of entry, and (II) either is sentenced to confinement or is confined therefor ... for one year or longer, is deportable.
8 U.S.C. § 1251(a)(2)(A)(i). Since the charge under this provision is the only charge that INS pressed, it is the only charge that we discuss.

2. The applicable statute reads in pertinent part:
An alien who is the spouse of a citizen of the United States, who is a person of good moral character, who is eligible to be classified as an immediate relative ..., and who has resided in the United States with the alien's spouse may file a petition ... [for relief if]:
(I) the alien is residing in the United States, the marriage between the alien and the spouse was entered into in good faith by the alien, and during the marriage the alien ... has been battered by or has been the subject of extreme cruelty perpetrated by the alien's spouse; and
(II) the alien is a person whose deportation would result in extreme hardship to the alien or a child of the alien.
8 U.S.C. § 1154(a)(1)(A)(iii) (1994).

cludability. *See Gando–Coello v. INS*, 888 F.2d 197, 198 (1st Cir.1989). Though the denial of a motion to reopen deportation proceedings usually possesses the requisite finality and thus triggers the judicial review provisions of the I & N Act, *see, e.g., Baez v. INS*, 41 F.3d 19, 21 (1st Cir.1994); *Goncalves v. INS*, 6 F.3d 830, 831–32 (1st Cir.1993); *Athehortua–Vanegas v. INS*, 876 F.2d 238, 240 (1st Cir.1989), we probe that denial solely to determine whether the Board misread the law or otherwise abused its discretion by acting in an arbitrary or capricious fashion. *See INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 724–25, 116 L.Ed.2d 823 (1992); *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988); *Henry v. INS*, 74 F.3d 1, 4 (1st Cir.1996).

■ The Board's discretion is sprawling, but it does not go untethered. "[A]djudicatory tribunals can exceed grants of discretion—even ringing grants of broad, essentially standardless discretion—in various ways." *Henry*, 74 F.3d at 4. In exercising discretionary authority, the Board is "obliged to weigh all the pertinent factors (both favorable and unfavorable), to exhibit due consideration for the universe of weighted factors when tallying the equities, to exercise independent judgment, and to state plainly its reasons for granting or denying relief." *Bing Feng Chen v. INS*, 87 F.3d 5, 7 (1st Cir.1996). Once the Board satisfies these obligations, however, it has discretion not only to deny a motion to reopen but also to deny a hearing thereon. *See Moore v. INS*, 715 F.2d 13, 16 n. 2 (1st Cir.1983).

### III

■ It is settled that the Board can deny a motion to reopen if (1) the alien fails to limn a prima facie case warranting relief, or (2) the alien fails to introduce material evidence that was not previously available, discoverable, or considered at the original hear-ing, or (3) the Board reasonably determines that the equities do not justify the application of a discretionary balm. *See* 8 C.F.R. § 3.2 (1996); *see also Abudu*, 485 U.S. at 104–05, 108 S.Ct. at 911–12 (applying this paradigm to the Board's denial of a motion to reopen); *Gando–Coello*, 888 F.2d at 198 (same). Here, the Board had ample justification to deny the petitioner's motion.

■ 1. *INS Approval.* INS authorization of a petition for a status adjustment under 8 U.S.C. § 1154 must occur before the Board can grant such relief. *See* 8 U.S.C. § 1154(b) (1994) (placing upon the Attorney General or her designee the responsibility to determine in the first instance "that the facts stated in the petition are true and that the [petitioner] is an immediate relative"). In this case, petitioner failed to present her petition for adjusted status as a battered spouse to the INS, and thus did not secure the requisite agency approval.

Approval by the INS is not an empty exercise, but, rather, ensures that the agency has a meaningful opportunity to verify a petitioner's claim that she has been subjected to physical abuse and otherwise satisfies the statutory criteria. Since the INS's imprimatur is a condition precedent to obtaining relief under 8 U.S.C. § 1154(a)(1)(A)(iii), petitioner's failure to comply with this requirement means that she is unable to state a prima facie case. Consequently, the Board's refusal to reopen the proceedings is unimpugnable.[3]

■ 2. *Good Moral Character; Extreme Hardship.* Petitioner also failed to establish a prima facie case under the battered spouse provision because she did not submit adequate evidence of either "good moral character" or "extreme hardship." We explain briefly.

As to character, the only evidence that petitioner proffered consists of a copy of her

---

**3.** Highlighting this same deficiency, the INS challenges our jurisdiction on the basis that petitioner failed to exhaust all available administrative remedies in that she neglected to have her petition verified by the INS.. "It is a familiar tenet that when an appeal presents a jurisdictional quandary, yet the merits of the underlying issue, if reached, will in any event be resolved in favor of the party challenging the court's jurisdiction, then the court may forsake the jurisdictional riddle and simply dispose of the appeal on the merits." *United States v. Stoller*, 78 F.3d 710, 715 (1st Cir.1996) (collecting cases). This is such a case. Hence, we take no view of the government's jurisdictional argument.

prison records, detailing her good behavior and involvement in training programs while she was incarcerated. The Board declined to accept these records as sufficient to show good moral character, and we are not persuaded that the Board's position is arbitrary or capricious.

We note that even appropriate extrinsic evidence of good moral character might well be futile here due to petitioner's conviction. In the deportation case proper, the Board found petitioner's manslaughter offense to be a crime of moral turpitude. The Board's judgments in such matters are not easily dismissed, *see Franklin v. INS,* 72 F.3d 571, 573 (8th Cir.1996) (explaining that since moral turpitude is a "nebulous" concept, courts will only overturn the Board's determination that a crime fits within that rubric if the determination is unreasonable); and, in all events, we think that manslaughter stemming from assault and battery is properly classified as a crime of moral turpitude. *Compare, e.g., Asencio v. INS,* 37 F.3d 614, 615 (11th Cir.1994) (holding that attempted murder is a crime of moral turpitude); *Rodriguez–Padron v. INS,* 13 F.3d 1455, 1458 (11th Cir.1994) (holding that second-degree murder is a crime of moral turpitude); *Gouveia v. INS,* 980 F.2d 814, 815–16 (1st Cir. 1992) (holding that rape is a crime of moral turpitude); *Thomas v. INS,* 976 F.2d 786, 787–88 (1st Cir.1992) (holding assault and battery with a baseball bat to be crimes involving moral turpitude). Accordingly, petitioner's conviction for manslaughter not only would constitute a violation of 8 U.S.C. § 1251(a)(2)(A)(i) but also would preclude her from establishing the "good moral character" necessary to qualify under the battered spouse provision. *See Flores v. INS,* 66 F.3d 1069, 1073 (9th Cir.1995) (holding that petitioner's conviction for welfare fraud precluded her from establishing the "good moral character" required to apply for a suspension of deportation under 8 U.S.C. § 1254(a)(1)).

■ Relatedly, petitioner neglected to proffer any evidence as to how deportation would work an extreme hardship to either herself or her child. This omission, in and of itself, prevented the establishment of a prima facie case. This is especially true in light of the Board's wide discretion in determining what does and does not rise to the level of "extreme hardship." *See Luna v. INS,* 709 F.2d 126, 127 (1st Cir.1983).

## IV

We need go no further. Given the absence of a prima facie case, the Board acted well within its discretion in summarily denying petitioner's motion to reopen.

***The petition for review is denied and dismissed.*** *See* 1st Cir. R. 27.1.