**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1706

NANA TOURE,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,
UNITED STATES OF AMERICA,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Mark B. Laroche, on brief, for petitioner.
Nancy E. Friedman, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Peter D. Keisler, Assistant Attorney General, and Carl H. McIntyre, Jr., Senior Litigation Counsel, were on brief, for respondent.

February 3, 2005

**Per Curiam**.  Petitioner Nana Toure ("Toure") appeals the Board of Immigration Appeals's ("BIA") summary affirmance of an Immigration Judge's denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture.  We affirm.

## I.  Background

Toure is a native and citizen of Guinea who entered the United States at New York, New York, on January 27, 1996 with a visitor for business visa that authorized her to remain for one month.  She overstayed, and on June 30, 1999, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear charging Toure with removability under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227 (a)(1)(B), for remaining in the United States for a time longer than permitted.

At a hearing before an Immigration Judge on January 12, 2000, Toure admitted the factual allegations against her, conceded removability, and requested asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Toure presented testimony in support of her application at hearings held on May 2, 2000 and February 21, 2001.  Toure testified that before coming to the United States, she lived in

---

[1]  In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE"). For simplicity, we refer to the agency throughout this opinion as the INS.

Conkary, Guinea with her father, mother, and four siblings. Toure's father was arrested and imprisoned for five years in 1979 for speaking out against the Guinean government and organizing a meeting against the government. While in prison, guards beat him and subjected him to electrical shocks. During this time, soldiers frequently came to Toure's home. Toure testified that the soldiers tied and beat Toure and her family, yelled at them, and that on one occasion a soldier raped Toure's cousin. Toure testified that she has a scar on her left cheek from one of the beatings.

Toure's father was released from prison in 1984, and continued to speak out against the government. In 1991, he was arrested and imprisoned for one year for holding meetings without the permission of the government. Toure left Guinea with an aunt in 1994 and went to Ivory Coast for two months, but returned to Guinea at her father's request. Toure testified that her father had attempted to leave Guinea but was prevented from doing so by the government, and that he wanted Toure to return to Guinea in order to keep the family together.

Toure also testified that she and her father were members of a political group called the Reunion for the People of Guinea ("RPG"). The RPG opposed the government and sought to bring democracy to Guinea. Toure's father was the local representative for the group. Toure testified that the group was founded "more than ten years ago," but that in the first year of its existence,

-3-

the group did not have a name. Toure also testified that she first heard the name "RPG" six or seven years previously, during a meeting at her home. Toure testified that there were 100 to 150 people at this meeting. When asked how that many people were able to fit into her home, Toure testified that the meeting was not in her home but in a permanent meeting place.

Toure never mentioned the RPG in her asylum application, and gave inconsistent testimony when trying to explain this omission at her hearing. Toure first testified that she did mention the RPG in her application, but eventually admitted that she did not mention the RPG in her application. Toure also admitted that, despite her alleged membership in the RPG, she never mentioned her own political affiliation in her asylum application. Upon further questioning, Toure said that she did not mention the RPG in her application because it did not have a name at that time, even though she had already testified that the RPG received its name six or seven years prior to her hearing. Toure finally testified that the RPG had a name when she filled out her application, but said she did not mention the name in her application because she had recently been released from prison and had "some kind of problem."

Toure testified that after she came to the United States, she learned from her uncle that her father had been shot and killed by soldiers in the streets of Conkary on February 2, 1996.

-4-

However, the death certificate that Toure provided to the Immigration Judge indicated that Toure's father died in the hospital as the result of an accident. Toure provided no explanation for this discrepancy.

Toure also testified that if she returns to Guinea, she and her daughter will be forced to undergo female genital mutilation ("FGM"). Toure testified that her sister in Guinea has already undergone FGM. Toure's father was opposed to FGM, but since his death, Toure's aunt (who supports FGM) has taken charge of the family. Toure testified that FGM is customary in Guinea. Toure also submitted documentary evidence detailing FGM practices in Guinea.

On August 20, 1998, Toure married Louis DeStephen ("DeStephen"), also a native and citizen of Guinea, in a proxy ceremony performed in Guinea while they were in Fall River, Massachusetts.[2] Toure knew DeStephen when they were both young and in Guinea, but they did not begin a serious relationship until they met in the United States. They have a daughter who was born on August 23, 1999 in Pawtucket, Rhode Island.

On May 9, 1999, Toure was arrested and charged with bank fraud. She pled guilty and was sentenced to two years' probation.

---

[2] Toure testified that she is a believer in Islam, and that in her religion, a couple can get married in their home country through proxies. Toure and her husband decided to have this type of ceremony because they were unfamiliar with the Islamic community in Fall River.

DeStephen was also arrested and eventually convicted. He entered removal proceedings on June 18, 1999, when the INS served him with a Notice to Appear. On May 1, 2000, Toure testified at DeStephen's hearing. The Immigration Judge in DeStephen's hearing found that Toure had given false testimony and was therefore not a credible witness.

In an oral decision on June 7, 2001, the Immigration Judge in Toure's hearing denied Toure's applications for asylum and withholding of removal, finding that she was not a credible witness and that she failed to prove past persecution or a well-founded fear of future persecution. In making the adverse credibility determination, the Immigration Judge relied on three factors: (1) Toure's inconsistent testimony regarding the RPG, (2) the discrepancy between Toure's account of her father's death and her father's death certificate, and (3) Toure's prior false testimony at DeStephen's hearing. The Immigration Judge also denied Toure's request for relief under the Convention Against Torture, finding that she had presented no evidence that she would be tortured in the future by the Guinean government or with the consent or acquiescence of a government official. Toure appealed to the BIA, which summarily affirmed the Immigration Judge's decision on April 18, 2003.[3] This appeal followed.

---

[3] Because the BIA did not render its own opinion, but instead adopted the opinion of the Immigration Judge, we review the decision of the Immigration Judge. See Settenda v. Ashcroft, 377

**A. Asylum**

Toure bears the burden of demonstrating her eligibility for asylum. 8 C.F.R. § 208.13(a). Toure may meet that burden by demonstrating past persecution or a well-founded fear of future persecution based on her "race, religion, nationality, membership in a particular social group, or political opinion." Id. § 208.13(b)(1). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." Id. § 208.13(a). To establish past persecution, an applicant must provide "conclusive evidence" that she was targeted on any of the five grounds. Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003). To show a well-founded fear of future persecution, "the applicant's fear must be both genuine and objectively reasonable." Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999). An applicant who has proven past persecution is "presumed to have a well-founded fear of future persecution unless the agency can prove otherwise." Fesseha, 333 F.3d at 18.

We will uphold the decisions of the Immigration Judge and BIA if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Guzmán v. INS, 327 F.3d 11, 15 (1st Cir. 2003)(quoting INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)). Under this standard, "[t]o reverse the

F.3d 89, 93 (1st Cir. 2004).

-7-

BIA finding, we must find that the evidence not only <u>supports</u> that conclusion, but <u>compels</u> it . . . ." <u>Elías-Zacarías</u>, 502 U.S. at 481 n.1 (emphasis in original).

### 1. **Credibility**

"[W]hen a hearing officer who saw and heard a witness makes an adverse credibility determination and supports it with specific findings, an appellate court ordinarily should accord it significant respect." <u>Aguilar-Solís</u>, 168 F.3d at 571. In this case, the Immigration Judge found that Toure was not a credible witness. The Immigration Judge supported his credibility determination with specific findings that "amply justified the IJ's conclusion that the petitioner's testimony lacked credibility." <u>Id.</u>

Toure first argues that the Immigration Judge erred by giving substantial weight to the findings of the Immigration Judge in DeStephen's case about Toure's credibility as a witness. That Immigration Judge found that Toure had presented false testimony in DeStephen's case. Toure argues that her Immigration Judge should have made a credibility determination based only on Toure's demeanor and testimony in her own proceeding. Further, Toure argues that her testimony in DeStephen's case was irrelevant to her own case. We disagree with both arguments.

Toure's Immigration Judge made several specific findings besides the finding that Toure gave false testimony in DeStephen's

asylum hearing.  Toure's Immigration Judge discussed her inconsistent testimony regarding the RPG and her father's death. These inconsistencies were not minor discrepancies, but went to the heart of Toure's credibility.  See Bojorques-Villanueva v. INS, 194 F.3d 14, 17 (1st Cir. 1999)(affirming an adverse credibility determination where multiple inconsistencies in the applicant's story were not minor discrepancies but "went to the central facts of the triggering event.")  At most, Toure's Immigration Judge set Toure's prior testimony "against the backdrop of the whole record and considered [it] as one factor in his credibility determination."  See Balogun v. Ashcroft, 374 F.3d 492, 504 (7th Cir. 2004).

Further, Toure's testimony, given under oath at DeStephen's hearing, was relevant to Toure's case.  We have stated that an applicant's "admittedly fraudulent original application, coupled with her rehearsed (and equally false) testimony at her initial asylum interview, fairly illustrated her propensity to dissemble under oath."  Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).  While Toure did not submit an admittedly fraudulent asylum application, her false testimony under oath in her husband's hearing "fairly illustrated her propensity to dissemble under oath."  Id.; see also Balogun, 374 F.3d at 503-04 (7th Cir. 2004) (finding misrepresentations made in an airport interview relevant to an asylum applicant's credibility, even though not directly

-9-

related to the basis of the applicant's fear of persecution, because they showed "a propensity to dissemble and to distort the truth when the need arises"). Since Toure's credibility was crucial to her case, we find that evidence of her false testimony, given under oath in connection with DeStephen's case, was relevant to Toure's credibility in her own case.

When Toure was asked to explain her prior testimony in her husband's case during cross examination in her own case, her answers were inconsistent and non-responsive. Toure first stated that she did not know anything about her husband's case. Upon further questioning, Toure stated:

> "If I understand, I am not here for you to ask me question about my husband, I am here for you to ask me question about my case. I do not know anything about what you talking about now. If you want, you can ask me questions about my case and I am going to answer, but, because I am not here to answer any question about my husband."

This inconsistent and non-responsive testimony during her own hearing raised further questions about Toure's general credibility. We find that Toure's prior testimony was relevant to her credibility and that Toure's Immigration Judge supported the credibility determination with specific findings.

Toure's second argument is that she was deprived of due process because she was not represented by counsel when she testified at her husband's asylum hearing, since that testimony was later used in her own hearing to support an adverse credibility

finding.  We review this claim de novo.  See Aguilar-Solís, 168 F.3d at 568.  While the Federal Rules of Evidence do not apply in INS proceedings, "the less rigid constraints of due process impose outer limits based upon considerations of fairness and reliability."  Yongo v. INS, 355 F.3d 27, 30 (1st Cir. 2004).

After reviewing the record, we find no merit to Toure's due process argument.  In the asylum context, due process gives aliens the right to be represented by counsel, at their own expense, in their removal proceedings.  See 8 U.S.C. § 1362; Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004).  In the instant case, Toure was represented by counsel at her own asylum hearing.  She was given a full and fair hearing and had an opportunity to present her entire case, including an opportunity to testify and present evidence to combat the evidence of her prior false testimony.  We are unaware of any case or statutory law that supports Toure's argument that due process entitled her to representation by counsel when she testified at DeStephen's hearing.  We therefore find that Toure was not deprived of due process.

In sum, Toure's testimony at DeStephen's hearing illustrated a propensity to testify falsely under oath.  Toure's explanations of that testimony at her own hearing only revealed further inconsistencies and a demeanor that harmed her credibility. In addition, her inconsistent and contradictory testimony regarding

the RPG and her father's death was itself substantial enough to support an adverse credibility finding.

### 2.  **Past Persecution**

Toure argues that her testimony regarding her father's persecution creates a presumption of her own well-founded fear of persecution.  In order to trigger a presumption of a well-founded fear of future persecution, an applicant must prove that she was persecuted because of her race, religion, nationality, membership in a particular social group, or political opinion.  8 C.F.R. § 208.13(b)(1).  Even putting aside Toure's lack of credibility, Toure has not attempted to demonstrate how the alleged persecution of her father constituted past persecution of her on the basis of a protected ground.  We find that substantial evidence supports the Immigration Judge's finding regarding past persecution, and that Toure is not entitled to a presumption of a well-founded fear of future persecution.

### 3.  **Future Persecution**

Toure argues that, even if she is not entitled to a presumption of a well-founded fear of future persecution, her testimony regarding her father's persecution and her fear of FGM, along with her documentary evidence concerning FGM in Guinea, was sufficient to establish a well-founded fear.[4]  To establish a well-

___

[4]  We note that FGM may constitute persecution under some circumstances.  See In re Kasinga, 21 I. & N. Dec. 357, 358 (BIA 1996)(stating that FGM may constitute persecution on account of

-12-

founded fear of future persecution, an asylum applicant must satisfy a subjective and objective prong. Both prongs depend on the applicant's credibility. To satisfy the subjective prong, the applicant must show her fear is genuine. Fesseha, 333 F.3d at 19. To satisfy the objective prong, the applicant "must show by credible evidence that her fear of future persecution is reasonable." Laurent, 359 F.3d at 65. Because Toure was not credible, the Immigration Judge found that she did not satisfy either prong. The evidence before us does not compel a different result, and we therefore find that Toure has failed to establish a well-founded fear of future persecution.

## B. <u>Withholding of Removal</u>

Because Toure is unable to satisfy the less stringent standard for asylum, she is <u>a fortiori</u> unable to satisfy the test for withholding of deportation. Albathani v. INS, 318 F.3d 365, 374 (1st Cir. 2003).

## C. <u>Convention Against Torture</u>

Toure's final argument is that she is entitled to relief under the CAT because she will be tortured if returned to Guinea. She bases this argument on her testimony and on country condition reports regarding FGM in Guinea. To be entitled to relief under the CAT, Toure must demonstrate that it is more likely than not that she will be tortured if removed to Guinea. 8 C.F.R. § 208.16

membership in a particular social group).

-13-

(c)(2).  The regulations implementing the CAT define torture as "severe pain or suffering," inflicted for one of several listed purposes "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  Id. § 208.18(a)(1).  The Immigration Judge found that Toure had failed to present any evidence that she would be tortured by the Guinean government or any agent of the Guinean government.  Toure, referring to an Amnesty International report on FGM, argues that the Guinean government refuses to outlaw FGM and therefore acquiesces or consents to the practice.  However, this Amnesty International report indicates that FGM is illegal in Guinea, that the Guinean Supreme Court is working to propose a constitutional amendment prohibiting FGM, and that several high-level government officials have spoken out against FGM.  This evidence belies Toure's claim of government acquiescence.  Consequently, we find that substantial evidence supports the Immigration Judge's findings as to the CAT.

### III.  Conclusion

For the reasons stated above, the BIA's order is affirmed.

**Affirmed**.

-14-