# United States Court of Appeals
## For the First Circuit

---

No. 04-1694
No. 05-1276

JIN DONG ZENG,

Petitioner,

v.

ALBERTO R. GONZALES,[*] Attorney General,

Respondent.

---

ON PETITION FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

William A. Hahn and Hahn & Matkov on brief for petitioner.
H.S. García, United States Attorney, Miguel A. Fernández, Assistant United States Attorney, and Rebecca Vargas Vera, Assistant United States Attorney, on brief for respondent.

---

January 27, 2006

---

[*]Alberto R. Gonzales was sworn in as Attorney General of the United States on February 3, 2005. We have substituted him for John Ashcroft, previous holder of that office, as the respondent in No. 04-1694. See Fed. R. App. P. 43(c)(2).

**STAHL**, <u>**Senior Circuit Judge**</u>.    In this consolidated petition for review, Jin Dong Zeng contests two decisions by the Board of Immigration Appeals (BIA), one upholding the Immigration Judge's order of removal and the other denying Zeng's motion to reconsider or reopen the removal proceedings below.  After careful review, discerning no error, we affirm both decisions.

**I.**

Zeng is a native and citizen of the People's Republic of China.  He entered the United States at Los Angeles International Airport on August 29, 2001, and removal proceedings were initiated against him about two weeks later.  Zeng's attempt to enter the United States stemmed, he said, from China's family planning policy that allows each family to have only one child.  In rural areas, the policy is sometimes relaxed and families are permitted two children.  Zeng alleges that he and his wife, who lived in a rural community in Fujian Province, had had two children without major incident but that the arrival of their third child in 1998 caused problems with the authorities.

According to Zeng, after the birth of the third child, Zeng's wife was arrested, detained for one month, and later sterilized.  In addition, Zeng was ordered to pay a fine of 30,000 yuan (roughly $3,000).  When the authorities approached him to collect the fine, an altercation ensued and Zeng fled to Fuzhou City.  He later left the country, traveled to Burma and Thailand

-2-

and eventually, with the assistance of a human smuggler known as a "snakehead," came to the United States.

Before the Immigration Judge (IJ), Zeng conceded removability but applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  A non-citizen seeking asylum in this country "bears the burden of establishing his eligibility by proving that he qualifies as a refugee."  Nai Qing Xu v. Gonzales, 424 F.3d 45, 48 (1st Cir. 2005) (citing 8 U.S.C. § 1158(b)(1)).  Zeng's asylum application was premised on the 1996 amendments to the Immigration and Nationality Act, which expanded the Act's definition of "refugee" to encompass persons who have "been forced to abort a pregnancy or to undergo involuntary sterilization, or who ha[ve] been persecuted for failure to undergo such a procedure or for other resistance to a coercive population control program."  8 U.S.C. § 1101(a)(42).  The BIA interprets this provision to protect not only those people who have themselves been forcibly sterilized, but also their spouses.  See Gi Kuan Tai v. Gonzales, 423 F.3d 1, 4 (1st Cir. 2005) (citing In re C-Y-Z-, 21 I. & N. Dec. 915 (BIA 1997)).

At the hearing before the IJ, Zeng attempted to prove that he qualified for asylum based on the Chinese government's forced sterilization of his wife.  Zeng's lawyer, however, was

quite unprepared to present his client's case.[1]  He did not provide certified translations of relevant documents or proper foundations for photographs and x-rays, and the IJ correspondingly refused to admit those items into evidence.  As a result, the IJ rested her decision primarily on the evidence provided by Zeng in his own testimony.  She found his account to lack "internal coherence or consistency" and that key details, such as when Zeng left China and what he did afterward, had not been elucidated adequately.  The IJ concluded that Zeng had failed to establish either that his wife was sterilized or that such sterilization had been involuntary.  Because Zeng had not proved eligibility for asylum, the IJ denied his application and ordered him removed to China.

After the BIA approved the removal order, Zeng filed a timely petition for review with this court.  He then moved the BIA to reconsider or reopen his case, this time appending a report from an American physician who had analyzed his wife's medical records and x-rays and concluded that the documents were "consistent with a forced sterilization."  When that motion was denied, Zeng again petitioned to this court; the two petitions have been consolidated into the present case.  See 8 U.S.C. § 1252(b)(6).

---

[1]In her decision, the IJ described the proceeding as "without a doubt one of the most poorly prepared and presented asylum cases that I have come across in my over eight years on the bench."

**II.**

We review the BIA's denial of Zeng's motion to reconsider or reopen for abuse of discretion. See Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003).[2] Abuse of discretion occurs "where the BIA misinterprets the law, or acts either arbitrarily or capriciously." De Xin Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004).

**A.**

A motion to reopen must satisfy two threshold requirements. First, it must "establish 'a prima facie case for the underlying substantive relief sought.'" Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (quoting INS v. Abudu, 485 U.S. 94, 107 (1988)). Second, the motion must offer previously unavailable material evidence; that is, material evidence that "was not available and could not have been discovered or presented at the former hearing." Orehhova v. Gonzales, 417 F.3d 48, 52 (1st Cir. 2005) (quoting 8 C.F.R. § 1003.2(c)(1)). Even if both showings are made, the BIA still retains discretion to deny the motion. See Fesseha, 333 F.3d at 20.

Zeng contended in his motion to reopen that he now had new evidence to demonstrate that his wife was forcibly sterilized

---

[2]A motion to reconsider asks the BIA, on the existing record only, to correct an error of fact or law in a previous BIA decision. A motion to reopen, by contrast, offers new evidence for the BIA's consideration. See Zhang, 348 F.3d at 292-93. Because Zeng's claim centers around the newly proffered medical evidence he submitted with the motion, we address the issues presented by a challenge to a denial of a motion to reopen.

and, consequently, that he is eligible for asylum.[3]  The evidence he now offers consists of a letter from a Boston physician who had read Zeng's wife's medical records and x-rays, consulted with a radiologist, and determined that "[t]he story/history presented is consistent with a forced sterilization bilaterally."  The BIA considered this evidence insufficient to warrant reopening the case because it "fails to prove [Zeng's] prima facie eligibility for asylum and that, specifically, the [sterilization] procedure was coerced. . . . Moreover, the evidence is simply not new as the fact of her sterilization existed at the time of the hearing."  The question for us is whether the BIA abused its discretion in reaching this conclusion.

Zeng urges us to follow the Second Circuit case of Ke Zhen Zhao v. U.S. Dept. of Justice, 265 F.3d 83 (2d Cir. 2001). Zhao also involved a Chinese man seeking to reopen his application for asylum on the ground that he had new evidence to demonstrate his wife had been forcibly sterilized.  The court held that the BIA

---

[3]In addition to asylum, Zeng initially sought withholding of removal and relief under the CAT.  Because a claim for withholding of removal requires a more stringent offer of proof from the applicant than does a claim for asylum, if an applicant does not succeed on the latter, he cannot succeed on the former.  See Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). Therefore, our disposition of Zeng's asylum claim means we need not discuss separately his claim for withholding of removal.  As for Zeng's claimed entitlement to relief under the CAT, the IJ found that "there simply is no evidence to establish that claim on any ground."  We have seen nothing in the record that would cause us to disagree with the IJ's assessment, and in any event Zeng does not press his CAT claim before us.

abused its discretion in denying the motion to reopen.  Id. at 93.
Despite some similarity in the background facts, however, there are
dispositive differences between Zhao and the present case.

       To begin with, Zhao's hearing took place before the 1996
statutory amendments that allowed an alien to qualify for asylum
based on his spouse's coerced sterilization.  At that hearing, Zhao
claimed not only that his wife was forcibly sterilized but that he
himself feared being subjected to the procedure should he return to
China.  Id. at 86.  In addition, the Zhao holding seemingly
contemplated two different possible scenarios - either the BIA
itself found as fact that the petitioner's wife had been
sterilized, or it had not made such a finding.[4]  Id.  at 93.
Assuming the first scenario, the Second Circuit held that the BIA
acted arbitrarily in denying asylum to Zhao when it had recently
granted asylum to a different alien on facts that were
substantially parallel.  Id. at 95.  But this scenario does not
help Zeng in the case at bar, because here, the BIA made no finding
about the nature or truth of his wife's sterilization.  To the
contrary, it cited the IJ's finding that Zeng's testimony was
inconclusive on that point.[5]  The second scenario in Zhao involved

---

       [4]Whether the BIA had made this finding was debatable from the
language of its order.  See Zhao, 265 F.3d at 93.

       [5]Zeng points to the BIA's statement that the doctor's report
he submitted with his motion to reopen was "not new" because "the
fact of [the wife's] sterilization existed at the time of the
hearing."  It is true that this statement appears to presume that

an assumption that the BIA did <u>not</u> find that the petitioner's wife had been sterilized.  The Second Circuit found it was unfair for the BIA to then treat the evidence as not "new."  <u>Id.</u>  Again, however, this is no help to Zeng, because in <u>Zhao</u>, the BIA had <u>sua sponte</u> converted the alien's motion to reconsider – which does not require a proffer of previously unavailable evidence - into a motion to reopen, which does.  <u>Id.</u>  The court thus held that the BIA should have given the petitioner a chance to explain why the newly offered evidence was previously unavailable.  <u>Id.</u>  In addition, the court noted that the relevance of the new evidence would not have been apparent at the time of the hearing four years earlier, because dispositive changes in the law had occurred in the interim.  <u>Id.</u> at 95-96.  None of those circumstances is present in this case.

Thus, we find <u>Zhao</u> inapposite to this case.  We focus instead on the BIA's determination that the doctor's report Zeng submitted with his motion to reopen was "not new" within the meaning of the regulation because it was previously available.  We see no flaw in this conclusion.  Because Zeng claimed his wife had

---

the wife was in fact sterilized.  However, we believe it fair to construe the statement to mean that the sterilization, <u>if</u> it occurred, had already taken place by the time of Zeng's hearing. Alternatively, the BIA could have been stating that, after looking at the newly proffered doctor's report, <u>now</u> it was clear that the sterilization had occurred.  This later elucidation, however, does not change the fact that the sterilization was not proven at the initial hearing.

been sterilized well before the hearing and had her x-rays in hand all along, the doctor's report could have been sought in time to be presented at that hearing. We conclude that the BIA was within its discretion to deny Zeng's motion solely on the ground that it did not include the required new evidence.[6]

## B.

It appears to us that Zeng's underlying argument is that he should be excused from failing to present the Boston doctor's report at his removal hearing because his lawyer, not he, is to blame for offering only unauthenticated documents at the hearing. This is a claim of ineffective assistance of counsel.[7] An asylum petitioner may satisfy the "previously unavailable evidence" requirement by claiming that he received ineffective assistance of counsel at the initial hearing. See Orehhova, 417 F.3d at 52 (citing Saakian v. INS, 252 F.3d 21, 25 (1st Cir. 2001)). However, a motion to reopen based on ineffective assistance of counsel must be accompanied by certain specific documents regarding the

---

[6]Because we find that the BIA was justified in denying Zeng's motion to reopen solely because it did not include the requisite new evidence, we do not address the BIA's finding that the Boston physician's x-ray analysis failed to prove Zeng's prima facie case because it did not demonstrate that his wife's sterilization was coerced.

[7]Although Zeng's briefs to this court do not make this argument in so many words, they do cite to First Circuit cases governing ineffective assistance of counsel claims in removal proceedings, invoke key phrases from those cases, and describe the flawed performance of the lawyer below. We thus do not deem the argument waived.

relationship between attorney and client. See Saakian, 252 F.3d at 25-26 (discussing Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988)). In its opinion affirming the IJ's order of removal, the BIA noted that "[i]nsofar as the respondent seeks remand on the basis of ineffective assistance of counsel, we find that he has failed to comply with the procedural requirements set forth in [Lozada]."[8]

It is firmly within the BIA's discretion to deny motions to reopen for failure to meet the Lozada requirements, "as long as it does so in a non-arbitrary manner." Asaba v. Ashcroft, 377 F.3d 9, 11 (1st Cir. 2004). Zeng argues that the BIA acted arbitrarily in denying his motion when his lawyer's ineffective performance was clear from the face of the record. See Escobar-Grijalva v. INS, 206 F.3d 1331, 1335 (9th Cir. 2000) (BIA abused its discretion by holding petitioner to Lozada requirements when facts showing lawyer's extreme lack of preparedness were "plain on the face of

---

[8]This finding was made in the first of the BIA's two decisions in Zeng's case, that is, its order affirming the IJ's order of removal. In its subsequent order denying Zeng's motion to reopen, the BIA noted that it had "already determined that the respondent did not receive ineffective assistance of counsel." Zeng argues that this statement is incorrect because the BIA had, previously, determined only that Zeng had not complied with the procedural Lozada requirements, and had not made a determination on the merits of Zeng's claim. However, Zeng fails to note that, in its first decision, the BIA stated it was "not persuaded" that Zeng would have prevailed in his asylum petition, regardless of his attorney's alleged misconduct. To prevail on the merits of an ineffective assistance claim, an alien must show prejudice to his case, see In re Assaad, 23 I. & N. Dec. 553, 561-62 (BIA 2003), and here the BIA determined – albeit perfunctorily – that Zeng failed to show such prejudice.

the administrative record").  This circuit has not recognized the "plain on the face of the record" exception to the <u>Lozada</u> requirements; we have chosen to assess each case for arbitrariness on its own facts.  <u>Compare</u> <u>Saakian</u>, 252 F.3d at 26-27 (BIA acted arbitrarily in not excusing failure to strictly meet <u>Lozada</u> requirements where alien, acting pro se, filed timely motion and IJ falsely implied to alien that he had no right to re-file) <u>with</u> <u>Gi Kuan Tai</u>, 423 F.3d at 6 (BIA did not act arbitrarily in dismissing for failure to comply with <u>Lozada</u> where mitigating factors like those in <u>Saakian</u> were not present).

In this case, the transcript of the hearing before the IJ certainly suggests that Zeng's counsel was more of a liability to his client than an asset.  Nonetheless, Zeng was represented by a new attorney on appeal.  There is no indication that the IJ misled him in any way, nor that the <u>Lozada</u> documents were ever ultimately produced, as they were in <u>Saakian</u>.  We conclude, therefore, that "unlike <u>Saakian</u>, this is not a case where petitioner 'did what he was supposed to do in order to be heard on the merits' and nonetheless never received a merits hearing."  <u>Gi Kuan Tai</u>, 423 F.3d at 6 (quoting <u>Saakian</u>, 252 F.3d at 27).  Thus, the BIA did not act arbitrarily in declining to entertain Zeng's ineffective assistance of counsel claim.

## C.

We are left with only the petition for direct review of the BIA's order affirming the IJ's order that Zeng be removed to China. We may reverse that decision "only if the petitioner's evidence would compel a reasonable factfinder to conclude that relief was warranted." Nai Qing Xu, 424 F.3d at 48 (citation omitted). In light of the foregoing discussion, we have no problem concluding that Zeng's evidence would not compel a reasonable factfinder to find in his favor.

## III.

For the reasons stated above, we **affirm** the decisions of the Board of Immigration Appeals.