B. FLETCHER, Circuit Judge,
dissenting from all but the result.
I respectfully dissent from all but the result that is required by procedural default.
“It is well-settled that [female genital mutilation] constitutes persecution sufficient to warrant a grant of asylum.” Abebe v. Gonzales, 432 F.3d 1037, 1042 (9th Cir.2005) (en banc) (citing In re Kasinga, 21 I. & N. Dec. 357, 365 (BIA 1996); Mohammed v. Gonzales, 400 F.3d 785, 795-96 (9th Cir.2005); Toure v. Ashcroft, 400 F.3d 44, 49 n. 4 (1st Cir.2005); Balogun v. Ashcroft, 374 F.3d 492, 499 (7th Cir.2004); Abay v. Ashcroft, 368 F.3d 634, 638 (6th Cir.2004); Abankwah v. INS, 185 F.3d 18, 23 (2d Cir.1999)); see also Benyamin v. Holder, 579 F.3d 970 (9th Cir.2009). The majority opinion appears to ignore this fact, elevating the potential discomfort a lawyer might feel in asking a woman whether she has suffered female genital mutilation over the lawyer’s duty to do his or her job. I cannot accept this premise.
“For an alien unfamiliar with the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process.” Mohammed v. Gonzales, 400 F.3d 785, 792 n. 7 (9th Cir.2005) (internal quotation omitted). Although the Sixth Amendment right to counsel does not apply in a deportation proceeding, the petitioner still must be afforded due process under the Fifth Amendment. Id. at 793. Ineffective assistance of counsel rises to the level of a due process violation if “the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.” Id. (internal quotation omitted). To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate that counsel failed to perform with sufficient competence and that counsel’s performance resulted in prejudice. Id. Prejudice results when the inadequate performance may have affected the outcome. Id. at 793-94.
Teclezghi has carried her burden on both prongs. The country conditions report in the record shows that nearly 90 percent of women in Eritrea experience genital mutilation. Thus, the attorneys in this case should have been on notice of the high probability that Teclezghi would be eligible for asylum because she had undergone this brutal procedure. Teclezghi presented evidence on her motion to reopen *620 that she, personally, had suffered female genital mutilation, including a declaration from a board-certified physician who had conducted an exam of Teclezghi and found her “prepuce and clitoris were absent” and that the “labia minora were also absent bilaterally.” Yet her attorneys all failed to inquire as to whether Teclezghi had suffered genital mutilation. An attorney does not perform competently where the attorney fails “to inquire of his or her own accord into the condition of a client’s genitals,” maj. op. at 619, when that condition — here, female genital mutilation — is an established basis for asylum and the country conditions report indicates a 90 percent chance the client has suffered this form of persecution.
If it was not clear in 1998 when Teclez-ghi initially filed for asylum, it is clear now: Female genital mutilation is a ground for asylum. Mohammed, Abebe, and Benyamin erase any doubt about that fact. Therefore, Teclezghi was prejudiced by the failure of her attorneys to inquire into and raise female genital mutilation as a ground for asylum, as this failure not only might have affected the outcome of the proceeding, but it most certainly did. See Mohammed, 400 F.3d at 794.
Had the motion to reopen been timely, Teclezghi would be entitled to relief. Our case law dictates that result. It is only because of the amount of time that elapsed between Teclezghi’s initial petition and her motion to reopen that I concur in the result.