# United States Court of Appeals
## For the First Circuit

No. 02-2518

SELIM BETOUCHE,
Petitioner,

v.

JOHN D. ASHCROFT, ATTORNEY GENERAL,
Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Torruella, <u>Circuit Judge</u>,

Cyr, <u>Senior Circuit Judge</u>,

and Oberdorfer[*], <u>Senior District Judge</u>.

<u>Saher Joseph Macarius</u> was on brief for petitioner.
<u>Joshua E. Braunstein</u>, Attorney, <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Emily Anne Radford</u>, Assistant Director, were on brief for respondent.

February 12, 2004

---

[*]Of the United States District Court for the District of Columbia, sitting by designation.

**CYR**, **Senior Circuit Judge**.  Petitioner-appellant Selim Betouche challenges various rulings by the Board of Immigration Appeals (BIA) declining to reopen the proceedings relating to his asylum application, in which he claimed that he received ineffective assistance of counsel and that conditions in his native Algeria have deteriorated since the entry of the final deportation order.  We affirm.

**I**

**BACKGROUND**

Betouche, a citizen and native of Algeria, entered the United States in July 1996 on a three-month visa and remained beyond its expiration.  In due course, the Immigration and Naturalization Service (INS) lodged a removability charge, and Betouche retained Desmond Fitzgerald, Esquire, to litigate the applications for asylum and withholding of deportation.[1]  On August 13, 1998, an immigration judge (IJ) denied the applications for asylum and withholding, and found Betouche removable.  Two days after the deadline, Attorney Fitzgerald filed a belated appeal to the BIA, which was summarily denied as untimely.

In May 2002, Betouche submitted a motion to reopen his case before the IJ, contending that political conditions in Algeria

---

[1]As its lone ground, the asylum application contended that, since at least 1992, members of Algeria's Islamic fundamentalist party had killed, assaulted or threatened members of the pro-Western socialist party to which Betouche allegedly belonged.

-2-

had changed since August 1998. The IJ denied the motion on the ground that Betouche failed to adduce any evidence of "materially changed" conditions.

Betouche retained new counsel, who appealed to the BIA and moved to reopen on the ground that Attorney Fitzgerald had rendered ineffective assistance of counsel in 1998 by filing the Betouche appeal two days late with the BIA, thereby resulting in its dismissal. The petition to reopen further alleged that Attorney Fitzgerald deliberately concealed the BIA dismissal from Betouche for more than three years.

In rejecting the appeal, the BIA (i) upheld the IJ's finding that Betouche had adduced no evidence of "changed conditions" in Algeria, and (ii) turned down his "ineffective assistance" claim for failure to adduce either an affidavit describing the terms under which Betouche retained Attorney Fitzgerald, or any evidence that Betouche had notified Attorney Fitzgerald either as to his "ineffective assistance" allegations or his September 2002 complaint to the Massachusetts Board of Bar Overseers. Betouche has petitioned to review both BIA rulings.

**II**

**DISCUSSION**

**A. The Ineffective Assistance of Counsel Claim**

Deportable aliens possess a Fifth Amendment due process right to be free from incompetent legal representation which

renders their deportation proceedings "fundamentally unfair." Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001); see also 8 U.S.C. § 1362 (according aliens right to counsel at their expense). The BIA denied the ineffective assistance claim due to Betouche's failure to comply with the first two of the three following BIA procedural requirements applicable to such claims: (1) an affidavit describing in detail the agreement between the alien and his counsel regarding the litigation matters the attorney was retained to address; (2) evidence that the alien informed his counsel as to the alien's ineffective assistance allegations and afforded counsel an opportunity to respond; and (3) evidence that the alien had either filed a complaint with the appropriate disciplinary authority regarding the attorney's ethical or legal misfeasance, or a valid excuse for failing to lodge such a complaint. Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988) ("Lozada").[2]

On appeal, Betouche contends that he complied with the

---

[2]In light of the unanimous adverse precedent, Betouche has not challenged the BIA's exercise of its discretion to insist, in a non-arbitrary manner, upon the Lozada requirements as a precondition to an alien's submission of an ineffective assistance claim. See Hernandez, 238 F.3d at 55 (expressing approval of Lozada requirements); see also Hamid v. Ashcroft, 336 F.3d 465, 468-69 (6th Cir. 2003) (endorsing Lozada); Xu Yong Lu v. Ashcroft, 259 F.3d 127, 133 (3d Cir. 2001) (same); Lara v. E.M. Trominski, 216 F.3d 487, 497-98 (5th Cir. 2000) (same); Lata v. INS, 204 F.3d 1241, 1245-46 (9th Cir. 2000) (same); Stewart v. INS, 181 F.3d 587, 596 (4th Cir. 1999) (same).

Lozada criteria in full.[3]  The BIA ruling rejecting the motion to reopen is reviewed only for an abuse of discretion.  See Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003).  We find none.

Betouche conveniently assumes that the September 10, 2002 letter, which he submitted to the Board of Bar Overseers, met the Lozada affidavit requirement.[4]  However, an unsworn letter plainly cannot qualify as an affidavit in a proceeding such as this.  See, e.g., Mason v. Clark, 920 F.2d 493, 495 (8th Cir. 1990) ("By definition an affidavit is a 'sworn statement in writing made . . . under oath or on affirmation before . . . an authorized

---

[3]Betouche belatedly asserts that the BIA abused its discretion, given that he "substantially" complied with the Lozada requirements.  As this contention was first raised in his reply brief on appeal, it has been forfeited.  See Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003).

[4]The Betouche letter states:

I would like to file a complaint against Attorney Desmond P. Fitzgerald.  I had hired [his] law firm ... in connection with all of my immigration matters.  I had applied for political asylum and my case was denied on August 13, 1998.  A Notice of Appeal must be filed with the [BIA] within 30 days of the [IJ's] decision.  However, Attorney Fitzgerald missed the deadline for filing my appeal with the [BIA], as it was filed on September 16, 1998. . . . Thereafter, my appeal was denied because it was deemed to have been untimely filed.  I have been denied my due process rights to appeal my case due to this error.  My case was summarily dismissed without considering its merits.
Attorney Fitzgerald never told me that my case for asylum was dismissed because he had filed late.  I was under the impression that my appeal was still pending until I was arrested by INS for having Final Order of Deportation.

officer.'") (citation omitted); Howland v. Cape Cod Bank and Trust Co., 526 N.E.2d 1073, 1074 (Mass. App. Ct. 1988) (same).[5]

Nor can such a deficiency be considered a mere technicality, given that Lozada advanced important policy reasons for insisting upon the submission of a sworn statement. Since a delay in deportation may itself constitute a substantial boon to an alien already subject to a final deportation order, there exists a significant prospect that entirely meritless and/or collusive ineffective assistance claims may be filed for purely dilatory purposes. See Hernandez, 238 F.3d at 55 (expressing approval of Lozada requirements as means to promote finality of deportation orders). The immigration courts, which reasonably cannot be expected to conduct a full-fledged evidentiary hearing for all such claims, must be able to impose fair and efficacious techniques for screening out, ab initio, the numerous groundless and dilatory claims routinely submitted in these cases. See In re Rivera, 21 I. & N. Dec. 599, 604-05 (BIA 1996). Thus, the requirement of a sworn affidavit, presaging and memorializing the testimony which the alien petitioner would present were he to be accorded a hearing, produces the primary evidentiary basis upon which the IJ evaluates the bona fides of the petitioner's claim in determining whether a

---

[5]Moreover, the Betouche letter failed to comply with 28 U.S.C. § 1746, which arguably may have permitted, in lieu of an affidavit, an "unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury."

hearing is even warranted. See id. Moreover, by exposing an alien to the potential pains of perjury, the affidavit requirement "'foster[s] an atmosphere of solemnity commensurate with the gravity of the [ineffective assistance] claim[s],'" Reyes v. Ashcroft, 348 F.3d 1126, 1131 (9th Cir. 2003) (affirming BIA denial due to alien's failure to submit affidavit) (citation omitted), and serves as a screening device whereby deportable aliens are discouraged from filing dilatory ineffective assistance claims.

Finally, even assuming that the Lozada-affidavit requirement might be excused, in some circumstances – beyond the alien petitioner's control – which prevented compliance, see Ontiveros-Lopez v. INS, 213 F.3d 1121, 1124-25 (9th Cir. 2000) (noting that Lozada requirements might be excused where alien demonstrated diligent (albeit deficient) efforts to comply); In re Rivera, 21 I. & N. Dec. at 602-03, Betouche proffers no explanation for his failure even to describe an ineffective assistance claim in affidavit form.[6]

---

[6]Although we have held that aliens found deportable in absentia – who have 180 days within which to file any number of motions to reopen – should be allowed to cure any initial defects in their Lozada materials within the 180-day period, see Saakian v. INS, 252 F.3d 21, 25 & n.3 (1st Cir. 2001), Betouche was allowed but one motion to reopen within 90 days of the final deportation order. See 8 U.S.C. § 1229a(c)(6)(C)(i). Even though Betouche belatedly attempted to submit a compliant affidavit for the first time in conjunction with the present appeal, our review is necessarily circumscribed by the administrative record established before the BIA. See Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003).

Furthermore, Betouche utterly failed to comply with the second Lozada requirement: that he demonstrate that he had advised Attorney Fitzgerald of his allegations and accorded Fitzgerald an opportunity to respond. Although Betouche cursorily represented in his appellate brief before the BIA that his attorney "ha[d] been given an opportunity to respond," the BIA correctly noted that he adduced no evidence of that notification, such as a copy of a letter from Betouche to his attorney. See Lozada, 19 I. & N. Dec. at 639 ("Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the [alien's] motion."); see also Reyes, 348 F.3d at 1132 ("[T]he [Lozada] notice requirement serves both to notify a petitioner's former counsel of the ineffective assistance allegations and to give former counsel an opportunity to contest them before the IJ. The participation of a petitioner's former counsel, in turn, provides a mechanism by which the IJ may more accurately assess the merits of a petitioner's ineffective assistance claims.").

In addition, the September 2002 letter from Betouche to the Board of Bar Overseers simply established that Betouche had notified the Board of Bar Overseers of his complaint, not that either he or the Board had notified Attorney Fitzgerald. The November 12, 2002 letter, in which Attorney Fitzgerald implicitly acknowledged notice of the September 2002 Bar complaint, plainly was not part of the administrative record when the BIA issued its

-8-

October 31, 2002 decision, and therefore is to be disregarded in the instant appeal. See Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003) (citing 8 U.S.C. § 1252(b)(4)(A)). As Betouche inexcusably failed to comply with the first two Lozada requirements,[7] the BIA did not abuse its discretion in denying the motion to reopen.[8]

## B. The "Changed Circumstances" Claim

Next, Betouche contends that the BIA erred in rejecting his motion to reopen the deportation proceedings, given that conditions in Algeria had deteriorated significantly between August 1998 and April 2002.[9] By way of proof, Betouche points to a 2001

---

[7]Since Betouche made no prima facie showing that Attorney Fitzgerald failed to advise him that his BIA appeal had been dismissed as untimely, the motion to reopen – filed more than three years after that dismissal – obviously was untimely. See 8 U.S.C. § 1229a(c)(6)(C)(i) (requiring that motions to reopen be filed within 90 days of final deportation order).

[8]Moreover, even if Betouche had met the Lozada criteria, he would have had the burden to establish at least a reasonable probability of prejudice resulting from his former attorney's failure to bring a timely appeal from the final deportation order. See Saakian, 252 F.3d at 25. Counsel's failure to prosecute an immigration appeal – even if negligent – does not constitute prejudice, per se. See Hernandez, 238 F.3d at 56 ("We have reviewed the [IJ's] [unappealed] decision and cannot find any such 'reasonable probability' that the result would have been different if counsel had carried through with an appeal to the [BIA] or to this court.") (citation omitted). As of the present appeal, Betouche has yet to make any attempt whatsoever to demonstrate any grounds for reversing the 1989 denial of his asylum application on its merits.

[9]Betouche also argues that he was "deemed credible and experienced past persecution," and so the burden of proof shifted to the government to rebut a presumption that he has a well-founded

-9-

State Department Human Rights Report, as well as "recent [newspaper] articles" and "affidavits," to demonstrate that serious political unrest "persisted" in Algeria, thus allegedly exposing Betouche to an increased risk of being targeted by Islamic fundamentalists in the event he were to return to Algeria. See 8 U.S.C. § 1229a(c)(6)(C)(ii) (allowing filing of motions to reopen beyond 90 days from final judgment of deportation where alien adduces material evidence, unavailable to him at the time of his asylum, that conditions in native country have changed). We find no abuse of discretion in the BIA denial. See Zhang, 348 F.3d at 292.

Betouche included none of the above-described reports, articles, and affidavits in the administrative record before the BIA. Thus, even if Betouche were to have produced these materials on the instant appeal (which he did not), they could not be considered. See Fesseha, 333 F.3d at 18. In their stead, we simply have Betouche's uncorroborated assertions that those materials would demonstrate that "the human rights situation in Algeria remained poor . . . and serious problems persisted." (Emphasis added.) Rather than demonstrating any alleged change-in-

---

fear of persecution if he returns to Algeria. See 8 C.F.R. § 208.13(b)(1). On the contrary, the IJ denied his motion to reopen solely on the lack of proof of changed circumstances in Algeria, and Betouche points to no record evidence that the IJ even considered whether or not his claim of past persecution was credible, given that this issue already had been finally adjudicated in the government's favor back in August 1998.

-10-

country circumstances, these bald assertions severely undermine Betouche's position, by suggesting exactly the opposite (<u>viz.</u>, that the same conditions have been <u>continuing</u> ever since 1998).  As such, these statements constitute a further attempt to relitigate the merits of the asylum claim rejected in 1998.

Accordingly, the order of the Board of Immigration Appeals is hereby **<u>AFFIRMED</u>**.