# United States Court of Appeals
## For the First Circuit

No. 03-1212

DE XIN WANG,

Petitioner,

v.

JOHN D. ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Torruella, <u>Circuit Judge</u>,
Cyr, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Jules E. Coven</u>, with whom <u>Matthew L. Guadagno</u> and <u>Bretz & Coven, LLP</u> were on brief for petitioner.
<u>Laura L. Flippin</u>, Attorney, Office of Immigration Litigation, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Emily Anne Radford</u>, Assistant Director, and <u>Andrew M. Eschen</u>, Attorney, Office of Immigration Litigation, were on brief for respondent.

May 5, 2004

**CYR, <u>Senior Circuit Judge</u>**.  After petitioner De Xin Wang, a citizen of the People's Republic of China, attempted to enter the United States in June 1992 with a counterfeit alien registration card, the Immigration and Naturalization Service ("INS") commenced exclusion hearings.  Wang thereupon submitted an asylum application predicated on the contention that he would be subjected to political persecution – based on his opposition to the Communist Party – upon his return to China.  Wang was married in the United States in 1996.  His wife gave birth to a boy in January 1997, and to a girl in May 2000.

In June 2000, an immigration judge (IJ) denied Wang's application for asylum, and Wang appealed to the Board of Immigration Appeals (BIA).  While the BIA appeal was pending, Wang hired new counsel, who submitted a motion to remand the case to the IJ based upon a "new set of circumstances": China likely would require that Wang or his wife undergo forced sterilization under the "One Child Policy" – which seeks to control the rate of China's population growth – because the couple already had two children.[1]

The BIA denied the Wang appeal, as well as his remand motion, on the ground that (i) the birth of the second child did not constitute "new evidence," but instead had occurred prior to

---

[1]The Immigration and Naturalization Act was amended in 1996 to provide that a well-founded fear of forced sterilization could serve as a legitimate ground for granting asylum.  <u>See</u> 8 U.S.C. § 1101(a)(42)(B); <u>Qin</u> v. <u>Ashcroft</u>, 360 F.3d 302, 306-07 (1st Cir. 2004).

the June 2000 exclusion hearing, and (ii) Wang had provided no testimony before the IJ that he harbored any fear of coerced sterilization.

Once again Wang retained new counsel, who submitted a motion to reopen and a second motion to remand with the BIA, contending that Wang's previous attorneys, who were well aware that Wang had children, rendered ineffective assistance of counsel by failing to pursue the alternate sterilization defense before the IJ.[2] In June 2003, the BIA denied both motions on two alternative grounds. First, Wang failed to satisfy the threshold procedural requirement that he submit an affidavit setting forth the particular agreement between himself and his former counsel regarding the scope of counsel's representation. Second, the Wang affidavit neither established that any prejudice resulted to his case from any omission on the part of his former counsel, nor that there was a sufficient likelihood that he would be subjected to forced sterilization in the event he were to be returned to China. Wang petitions for review of the June 2003 decision entered by the BIA.

We review the denial of a motion to reopen exclusion proceedings only for an abuse of discretion. See Mabikas v. INS,

---

[2]A deportable alien possesses a Fifth Amendment due process right to be free from incompetent legal representation which renders the deportation proceedings fundamentally unfair. See Betouche v. Ashcroft, 357 F.3d 147, 149 (1st Cir. 2004).

-3-

358 F.3d 145, 148 (1st Cir. 2004). An abuse of discretion will be found where the BIA misinterprets the law, or acts either arbitrarily or capriciously. See Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003).

Given the sheer volume of ineffective assistance of counsel claims asserted by deportable aliens, the BIA has developed threshold procedural requirements in order to enable the efficient screening of frivolous, collusive or dilatory claims. See Betouche v. Ashcroft, 357 F.3d 147, 150 (1st Cir. 2004) (citing Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988) ("Lozada "), and In re Rivera-Claros, 21 I. & N. Dec. 599, 604-05 (BIA 1996)). One of these threshold requirements mandates that an alien submit – with his motion to reopen – an affidavit "describing in detail the agreement between the alien and his counsel regarding the litigation matters the attorney was retained to address." Id. at 149 (emphasis added). The detailed information provided in this sworn affidavit enables the IJ and/or the BIA to pre-evaluate "the bona fides of the petitioner's claim in [order to] determin[e] whether a hearing is even warranted." Id. at 150.

The affidavit submitted by Wang stated, in pertinent part, that his former counsel

> never asked me questions about family planning
> conditions in China. They only asked if I was
> married and if we had children. They did not
> mention to me that conditions in China were
> arguments they could make for me in my
> [asylum] petition. They never asked about

-4-

what happens in China when a wife who already has children becomes pregnant, about whether we wanted to have more children, or whether we feared being sterilized if we were sent back. . . . They had many chances to add our fears about sterilization to my case. . . . They did not give us a chance to tell them that if my wife got pregnant again we could be fined or, because we already have a son, my wife could be forced to have an abortion if she got pregnant or that she and I would be sterilized if we were sent back. . . . [H]e did not tell us that we could raise the family planning conditions in China in our petition. He did not explain that after 1997 we could argue that the family planning conditions in China were a reason for asylum here. He did not ask us what family conditions were like in China or about our fears about what we would face if we were sent back with regard to our dream of having a larger family. If he did ask I would have told him that my sister was forced to undergo an abortion when she was almost nine months pregnant with her second child.

The BIA determined that the affidavit submitted by Wang failed to satisfy the screening test prescribed in Lozada.

In Azanor v. Ashcroft, [___ F.3d ___ (9th Cir. 2004)] No. 02-73599, 2004 WL 720166 (9th Cir. Apr. 1, 2004), a virtually identical contention was presented. There the BIA had denied a Nigerian citizen's asylum application which contended that were she to be deported to Nigeria, she would be persecuted based upon her ethnicity, religion, and political affiliation. Thereafter, the alien retained new counsel, and submitted a motion to reopen her case on the ground that her former attorney had rendered ineffective assistance by failing either to inquire whether she had undergone female genital mutilation (FGM) in Nigeria, or to inform

her that fear of FGM constitutes a valid ground for asylum.  Id. at *8.

The Azanor court affirmed the BIA decision, on the ground that Azanor failed to comply with the Lozada affidavit requirement: "[Azanor's sworn declaration] does not describe the nature and scope of her agreement with [her former attorney] – facts essential to a full and complete evaluation of her ineffective assistance claim."  Id.  Like the Azanor declaration, the affidavit submitted by Wang focuses almost exclusively upon what his counsel did not say, without ever indicating the scope of the legal representation agreed upon.  For all we can discern from the Wang affidavit, Wang may have retained these attorneys for the sole purpose of submitting an asylum application predicated upon his alleged fear of persecution due to his opposition to the Communist Party.  The Wang affidavit includes no mention – nor suggestion – that Wang retained his counsel to pursue any of the other potential grounds for asylum.

Moreover, in order to demonstrate ineffective assistance of counsel, the alien client must demonstrate that counsel's action or inaction rendered the immigration proceeding "so fundamentally unfair that the alien was prevented from reasonably presenting his case," and that there is a reasonable probability that counsel's conduct resulted in actual prejudice to the case.  See Saakian v. INS, 252 F.3d 21, 25 (1st Cir. 2001).  The BIA did not abuse its

discretion in concluding that the Wang affidavit failed to demonstrate that his case was prejudiced by any omission on the part of his former counsel. Rather, the Wang affidavit acknowledges that he never informed his former counsel that he feared returning to China because he and his wife wanted to have more children in the future, and he or she might be sterilized.[3] This is a significant omission. Although the affidavit asserts that Wang had "no opportunity" to inform his attorneys of his fear of sterilization, Wang concedes on appeal that he was accorded the opportunity to inform his former counsel of his reasons for fearing persecution in the event he were deported to China, but that he informed them only as to his past opposition to the Communist government. Wang now suggests that he would have advised his former attorneys regarding his fear of sterilization as well, had he known that it is a ground for asylum. Yet he concedes that he was unfamiliar with immigration law, and did not know which of his subjective fears might entitle him to seek asylum. Given even the grotesque prospect of being subjected to coerced sterilization, however, one reasonably could be expected, at the very least, to mention any such prospect to his own counsel during the course of his description of whatever fears he harbored in connection with returning to China.

---

[3]Nor did Wang ever testify before the IJ to any subjective fear of forced sterilization.

-7-

Additionally, Wang contends that his former attorneys, after having been informed that Wang was a married man with children, should have anticipated that he would want to have more children, and therefore that he might harbor a fear of forced sterilization. Short of assuming either omniscience on the part of counsel, or presupposing that Wang retained counsel on the understanding that they would ferret out every conceivably applicable ground for asylum for which Wang might qualify, see supra, the objective circumstances in the instant case certainly did not compel a reasonable inference that Wang could prevail upon an asylum application predicated upon a fear of coerced sterilization.[4] In order to present a viable asylum claim, the applicant must demonstrate both an objectively reasonable and a subjective fear of persecution. See 8 C.F.R. § 208.13(b)(2); Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003). Thus, any prejudice to Wang's case proximately flowed from Wang's failure to convey to counsel a predicate fact: Wang's subjective fear of such persecution. See Azanor, [___ F.3d ___], No. 02-73599, 2004 WL 720166, at *9 ("By her own admission, Azanor never informed [her former counsel] that she had suffered FGM in Nigeria. Thus, any

_____

[4]Moreover, we note that the record evidence does not compel an inference that Wang's subjective fear of sterilization would be considered objectively reasonable, as the record contains evidence that the compelled sterilization policy is not enforced systematically in the rural areas of China where Wang resided. Cf. Qin, 360 F.3d at 307.

prejudice arising from [her former attorney's] failure to raise an FGM claim in her original deportation proceeding was directly attributable to Azanor's failure to inform [her former attorney] rather than the quality of [his] representation."); cf. Sims v. Singletary, 155 F.3d 1297, 1316 (11th Cir. 1998) (noting that counsel's performance cannot be considered deficient if counsel was "unaware due to [the client's] refusal to assist them in obtaining the information"); Langford v. Day, 110 F.3d 1380, 1386-88 (9th Cir. 1997) (noting that counsel's failure to pursue a Miranda defense did not constitute ineffective assistance, because the defendant failed to inform his counsel of the events surrounding the alleged Miranda violation).[5]

As the affidavit submitted by Wang failed to disclose sufficient indicia of any ineffective assistance of counsel, Saakian, 252 F.3d at 25, the BIA did not abuse its discretion in rejecting the motion to reopen the exclusion proceedings.

**Affirmed**.

---

[5]Before this court, Wang now contends, by way of analogy, that a client charged with homicide who consults a criminal attorney, and merely tells him that he has an alibi defense, would expect the attorney to pursue other potentially available defenses as well, such as a statute-of-limitations bar. The analogy is seriously flawed. A criminal attorney in such a circumstance might verify the viability of a limitations defense once apprised of one objective fact (viz., the date of the alleged homicide), a fact which may or may not have been learned from the client. In contrast, the viability of the Wang sterilization claim would only become apparent to an attorney if and when the client expressed a subjective fear, information which obviously can only be derived from the asylum applicant.