**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 04-1120

STEPHEN AHLIJAH,

Petitioner,

v.

JOHN ASHCROFT,
UNITED STATES ATTORNEY GENERAL,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, <u>Circuit Judge</u>,
Campbell, <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

---

    <u>Stephanie F. Dyson</u>, with whom <u>William P. Joyce</u> and <u>Joyce & Zerola, P.C.</u> were on brief, for petitioner.
    <u>Leslie McKay</u>, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Terri J. Scadron</u>, Assistant Director, were on brief, for respondent.

---

February 18, 2005

---

**Per Curiam.**  Petitioners Stephen Ahlijah ("Mr. Ahlijah") and Essivi Ahlijah ("Ms. Ahlijah") appeal the Board of Immigration Appeals' ("BIA") affirmance of an Immigration Judge's decision denying Mr. Ahlijah's applications for asylum, withholding of removal, cancellation of removal, and relief under the Convention Against Torture ("CAT"), and also denying Ms. Ahlijah's separate applications for asylum and relief under the CAT.  We affirm.

## I.  Background

Mr. Ahlijah is a native and citizen of Ghana and a member of the Ewe tribe, members of which are located in both Ghana and its neighbor to the east, Togo.  Mr. Ahlijah testified that he was raised by his uncle and lived in Akra, Ghana until 1979.  In 1979, there was a coup in Ghana, and Mr. Ahlijah's uncle, who was affiliated with the government, was arrested and imprisoned. Mr. Ahlijah and the rest of the family fled to Togo.  In 1987, Mr. Ahlijah married Ms. Ahlijah, who is a native and citizen of Togo and also a member of the Ewe tribe.

In 1987, Mr. Ahlijah joined a group called EKPEMOG, which means "young democrats fighting for freedom and justice in Togo." EKPEMOG opposed the Togolese government and sought greater freedom and democracy in Togo.  Mr. Ahlijah's duties for EKPEMOG included distributing fliers and delivering messages from group members in Ghana to group leaders in Togo.

Mr. Ahlijah testified that around November 1987, members of EKPEMOG in exile in Ghana crossed the border into Togo and attempted a coup against the Togolese government.[1] Mr. Ahlijah provided EKPEMOG with information regarding the movement of Togolese border guards. This information assisted EKPEMOG troops in crossing the border from Ghana into Togo. Mr. Ahlijah testified that he did not know that the information he provided was for a coup. He testified that after the coup failed, he was among a crowd of people who threw stones at soldiers and burned cars. Mr. Ahlijah also testified that he assisted in hiding some of the rebels. After the coup failed, Mr. Ahlijah went into hiding for one month.

In January 1989, he was arrested by the Togolose authorities and imprisoned for twenty days. During this time, the authorities beat him in order to extract information about other members of EKPEMOG. After his release, several friends from EKPEMOG disappeared, and Mr. Ahlijah began to fear for his safety because of his affiliation with EKPEMOG. In December 1989, a sympathetic Ewe police officer told Mr. Ahlijah that he should leave Togo because the government was looking for him. The officer helped Mr. Ahlijah acquire a Togolese passport and a visa under someone else's name. Mr. Ahlijah left Togo on December 17,

---

[1] Later in his testimony, Mr. Ahlijah stated that he could not remember if the coup took place in 1986 or 1987.

1989.  He entered the United States on December 18, 1989, at New York, New York.  He testified that he fears he will be arrested or killed by the Togolose government if he returns to Togo.  Mr. Ahlijah also testified that he fears returning to Ghana, even though his uncle has been released from prison and "every issue to do with [his] fleeing to Togo is over," because he believes the Togolese government would be able to find and kidnap him in Ghana.

In January 1990, the police came to the Ahlijahs' home in Togo looking for Mr. Ahlijah.  When they did not find him, they arrested Ms. Ahlijah.  She was imprisoned for two days without food, questioned about her husband's whereabouts and beaten.  Several months later, Ms. Ahlijah was arrested again and imprisoned for five days.  Between 1990 and 1993, Ms. Ahlijah remained in Togo.  She was not arrested again, although the police occasionally came to her house.  Ms. Ahlijah also testified that the family of Kokou Sukah, the man whose passport Mr. Ahlijah used to enter the United States, came to her house and asked her to tell her husband to return to Togo.  Apparently, Kokou Sukah was arrested for aiding Mr. Ahlijah, and his family wanted Mr. Ahlijah to return so that the police would stop harassing them.  In November 1993, Ms. Ahlijah left Togo and went to Ghana.  She originally stayed in the village of Denu, which is near the border with Togo.  She eventually went to the town of Tamale, further from the border, because she feared that Togolese police might find her in Denu.  In

-4-

1999, Ms. Ahlijah left Ghana and came to the United States. She entered the United States on December 23, 1999 at New York, New York.

On January 27, 1994, Mr. Ahlijah filed an application for asylum with the Immigration and Naturalization Service ("INS").[2] On August 22, 2000, Mr. Ahlijah's application was referred to an Immigration Judge. On October 18, 2001, Mr. Ahlijah amended his asylum application to include Ms. Ahlijah. On November 5, 2001, the INS issued a Notice to Appear to Mr. and Ms. Ahlijah, charging them with removability under § 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), for being inadmissible at the time of entry into the United States.

At a hearing before an Immigration Judge on April 30, 2002, Mr. and Ms. Ahlijah admitted the factual allegations against them and conceded removability. Mr. Ahlijah requested cancellation of removal, asylum, withholding of removal, and relief under the CAT. The Immigration Judge instructed Mr. Ahlijah to file his application for cancellation of removal by December 9, 2002, and made January 28, 2003, the date for the next hearing. At the hearing on January 28, 2003, Mr. Ahlijah, who had failed to meet the December 9, 2002 due date, filed his application for

---

[2] In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE"). For simplicity, we refer to the agency throughout this opinion as the INS.

cancellation of removal.  Also at this hearing, Ms. Ahlijah filed an independent asylum application, claiming Mr. Ahlijah as a derivative.

In an oral decision on May 1, 2003, the Immigration Judge denied Mr. Ahlijah's application for cancellation of removal because it was not timely filed, and his applications for asylum and withholding of removal because he was inadmissible as a terrorist under 8 U.S.C. § 1182(a)(3)(B)(i).  The Immigration Judge also denied Mr. Ahlijah relief under the CAT.  The Immigration Judge ordered that Mr. Ahlijah be removed to Ghana.  Mr. Ahlijah filed a timely notice of appeal to the BIA.

The Immigration Judge pretermitted Ms. Ahlijah's independent asylum application as untimely under 8 U.S.C. § 1158(a)(2)(B), because Ms. Ahlijah failed to file the application within one year of her arrival in the United States.  The Immigration Judge denied Ms. Ahlijah's requests for withholding of removal and relief under the CAT, and ordered Ms. Ahlijah to be removed to Togo, or, in the alternative, Ghana.  Ms. Ahlijah filed a separate notice of appeal to the BIA.

On December 24, 2003, the BIA consolidated the Ahlijahs' appeals and affirmed the decision of the Immigration Judge.  Unlike the Immigration Judge, the BIA reached the merits of Mr. Ahlijah's asylum and withholding of removal applications, and found that he had failed to prove past persecution or a well-founded fear of

future persecution should he return to Ghana. The BIA denied Ms. Ahlijah's independent asylum application, finding that she failed to file it within one year of her arrival in the United States, and that there were no extraordinary circumstances to explain the late filing. The BIA also found that both Mr. and Ms. Ahlijah failed to meet their burden of proof for relief under the CAT. Finally, the BIA affirmed the Immigration Judge's decision to deny Mr. Ahlijah's application for cancellation of removal because he failed to file it by the deadline set by the Immigration Judge.

A petition for review to this court was filed on January 21, 2004, but did not contain Ms. Ahlijah's name. On February 18, 2004, Mr. Ahlijah filed a motion to amend the parties to include an additional petitioner, Ms. Ahlijah. On April 26, 2004, we directed the parties to address in their briefs the issue of whether we have jurisdiction to consider an untimely request for judicial review by granting a motion to amend another person's timely petition to include the late filer. We address this issue first.

## II. **Analysis**

### A. Ms. Ahlijah's Appeal

A petition for review from all final BIA orders must be filed with this court within thirty days. 8 U.S.C. § 1252(b)(1); Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003). "This need to timely appeal is a strict jurisdictional requirement." Id. The petition for review must, among other things, "name each party

seeking review either in the caption or the body of the petition -- using such terms as 'et al.,' 'petitioners,' or 'respondents' does not effectively name the parties." Fed. R. App. P. 15(a)(2). The advisory committee notes state that, unlike Fed. R. App. P. 3(c), which deals with appeals from a district court, Fed. R. App. P. 15(a), which deals with appeals from administrative agencies, does not allow flexibility "to describe the parties in general terms rather than naming them individually"; instead, "each petitioner must be named." Fed. R. App. P. 15(a)(2) advisory committee's note.

Ms. Ahlijah concedes that her name and alien number did not appear on the petition for review to this court. She nevertheless argues that we should consider her to be properly included as a party to this petition. Ms. Ahlijah notes that her case was consolidated with Mr. Ahlijah's case before the Immigration Judge and BIA, that the Department of Homeland Security ("DHS") included her name and alien number in its only filing to this court, and that the DHS never opposed including Ms. Ahlijah in the petition during the time between the filing of the motion to amend parties to include Ms. Ahlijah and our order directing the parties to address this issue in their briefs. Ms. Ahlijah also argues that Mr. Ahlijah met the thirty-day window to file a petition, and that her "claim rides with his claim."

Given the inflexible nature of Fed. R. App. P. 15(a) and 8 U.S.C. § 1252(b)(1), we find that we do not have jurisdiction to hear Ms. Ahlijah's appeal. The fact that her case was consolidated with Mr. Ahlijah's before the Immigration Judge and the BIA has no bearing on her appeal to this court. Fed. R. App. P 15(a) provides clear, strict requirements for a petition to this court, and the status of the parties at the agency level is irrelevant to these requirements. Further, the fact that the DHS included Ms. Ahlijah's name on a filing to this court and did not immediately object to the motion to amend parties to include Ms. Ahlijah is irrelevant to whether we have jurisdiction over Ms. Ahlijah's petition. Finally, Ms. Ahlijah's independent claim does not "ride" with Mr. Ahlijah's claim. She filed a separate application below, and therefore was required to timely appeal any final order of the BIA. Ms. Ahlijah failed to do so, and we therefore find that we do not have jurisdiction to hear her independent appeal.

## B. Mr. Ahlijah's Appeal

### 1. Asylum

Mr. Ahlijah bears the burden of demonstrating his eligibility for asylum. See 8 C.F.R. § 208.13(a). He may meet that burden by demonstrating past persecution or a well-founded fear of future persecution based on any of five grounds, including "race, religion, nationality, membership in a particular social

group, or political opinion." Id. § 208.13(b)(1). We will uphold the decision of the BIA if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)(quoting 8 U.S.C. § 1105a(a)(4)). Under this standard, "[t]o reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it . . . ." Id. at 481 n.1 (emphasis in original).

Mr. Ahlijah first argues that the BIA erred because it did not address the Immigration Judge's finding that he was barred from relief because he was a terrorist, and instead found that he had not met his burden of proving past persecution or a well-founded fear of future persecution. According to Mr. Ahlijah, it was a violation of his due process rights for the BIA to address the merits of his eligibility for asylum when the Immigration Judge never did.

The BIA was not required to address the terrorist issue simply because that was the basis of the Immigration Judge's decision. While the BIA may not "engage in de novo review of findings of fact determined by an immigration judge", 8 C.F.R. § 1003.1(d)(3)(i), it "may review questions of law . . . de novo." Id. § 1003.1(d)(3)(ii). In the instant case, the Immigration Judge made findings of fact regarding Mr. Ahlijah's credibility and his experiences in Ghana and Togo. Based on those findings of fact,

the Immigration Judge concluded that Mr. Ahlijah was barred from relief as a terrorist. In its opinion, the BIA recognized the basis for the Immigration Judge's decision but chose not to address that issue. Instead, the BIA decided that, based on the facts as found by the Immigration Judge, Mr. Ahlijah had failed to prove that he suffered past persecution or had a well-founded fear of future persecution. This choice was within the powers granted to it under 8 C.F.R. § 1003.1(d). The BIA did not undertake a de novo review of facts found by the IJ, but instead undertook a de novo review of a legal question: Mr. Ahlijah's statutory eligibility for asylum.

After carefully reviewing the record, we conclude that Mr. Ahlijah was not deprived of due process. He had a full and fair hearing before the Immigration Judge and was allowed to present evidence to support his claim for relief. While the terrorist bar was an issue at his hearing, it did not prevent Mr. Ahlijah from presenting the evidence upon which he based his claims of past persecution and fear of future persecution. Further, the BIA acted within its powers when, relying on the facts found by the Immigration Judge, it found that Mr. Ahlijah had failed to prove past persecution or a well-founded fear of future persecution. While the Immigration Judge did not reach the merits of Mr. Ahlijah's asylum claim, she articulated the facts upon which

-11-

Mr. Ahlijah based his asylum claim. We therefore find that there was no due process violation.

Mr. Ahlijah next argues that the BIA should have found that he suffered past persecution or had a well-founded fear of future persecution. To establish past persecution, an applicant must provide "conclusive evidence" that he was targeted on any of the five statutorily protected grounds. Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003). An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). Mr. Ahlijah argues that he established past persecution at his hearing through testimony of his imprisonment for twenty days by the Togolese authorities, during which time he was beaten and asked questions about the names of other members of EPKEMOG.

We do not address whether this incident in Togo constituted persecution, because what happened in Togo is irrelevant to whether Mr. Ahlijah suffered persecution in Ghana. Mr. Ahlijah is a native and citizen of Ghana, and Ghana is his country of removal. In order to be eligible for asylum, Mr. Ahlijah has the burden of proving that he suffered past persecution in Ghana. However, Mr. Ahlijah has not claimed that he suffered past persecution in Ghana and we therefore find that Mr. Ahlijah did not suffer past persecution in Ghana.

Because Mr. Ahlijah has not proven past persecution in Ghana, he is not presumed to have a well-founded fear of persecution if he returns to Ghana. Absent such a presumption, to establish a well-founded fear of future persecution, "the asylum applicant's fear must be both genuine and objectively reasonable." Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999). We focus our discussion on the objective prong, asking "whether a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." Id.

Mr. Ahlijah does not argue that he fears persecution by anyone in Ghana. He instead argues that he has a well-founded fear of persecution if he returns to Ghana because (1) he has heard frequent reports of Togolose police pursuing people across the border into Ghana and kidnapping them; (2) the country condition reports in the record show that Togo's human rights record has worsened; and (3) these reports show that the border between Ghana and Togo is porous and that Togolese police frequently cross into Ghana to kidnap their targets.

At best, these reports indicate that the human rights conditions in Togo are poor, that many Togolese have fled into Ghana, and that in 1993-1994, there were isolated border skirmishes following the coup attempt in which Mr. Ahlijah took part. See, e.g., United States Dep't of State, 2001 Country Reports on Human Rights Practices, Togo (Mar. 4, 2002). They do not indicate that

-13-

the Togolese police frequently cross into Ghana to kidnap people. Further, the State Department 2001 report for Ghana indicated that the country was relatively calm. United States Dep't of State, 2001 Country Reports on Human Rights Practices, Ghana (Mar. 4, 2002). Whatever the situation in Togo, the evidence does not compel a finding that a reasonable person in Mr. Ahlijah's circumstances would fear persecution in Ghana on account of a statutorily protected ground.

### 2. **Withholding of Removal**

Because Mr. Ahlijah is unable to satisfy the less stringent standard for asylum, he is a fortiori unable to satisfy the test for withholding of deportation. See, e.g., Albathani v. INS, 318 F.3d 365, 374 (1st Cir. 2003).

### 3. **Convention Against Torture**

Mr. Ahlijah also argues that he is entitled to relief under the CAT because he will be tortured if he is returned to Ghana. An applicant for relief under the CAT must demonstrate "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16 (c)(2). The regulations implementing the CAT define torture as "severe pain or suffering," inflicted for one of several listed purposes "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. § 208.18(a)(1). Mr. Ahlijah, who bases his

-14-

argument on his arrest and beatings by the Togolose authorities, has presented no evidence that any Ghanian official tortured him or that it is more likely than not that he will be tortured if he is removed to Ghana.  We therefore find that substantial evidence supports the BIA's findings regarding the CAT.

### 4.  Cancellation of Removal

Mr. Ahlijah's final argument is that the BIA abused its discretion in finding that the Immigration Judge properly deemed his application for cancellation of removal abandoned.  According to Mr. Ahlijah, by deeming his application abandoned, the BIA abused its discretion by failing to exercise it in his favor and waive the deadline.  We find no merit to this argument.  An Immigration Judge has the power to "set and extend time limits for the filing of applications . . . . If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived."  8 C.F.R. § 1003.31(c).  At a hearing on April 30, 2002, the Immigration Judge set December 9, 2002 as the due date for Mr. Ahlijah's application for cancellation of removal.  Despite having over seven months to file the application, Mr. Ahlijah did not actually file the application until January 28, 2003.  The Immigration Judge was therefore within her power to deem the application abandoned.

Mr. Ahlijah also argues that the BIA failed to consider his arguments that his late application was due to ineffective assistance of counsel. Mr. Ahlijah, however, has not shown that he complied with the requirements of Matter of Lozada, 19 I & N Dec. 637, 639 (BIA 1988), which the BIA has developed as a screen for frivolous ineffective assistance of counsel claims. Under the Lozada requirements, an applicant must support a claim of ineffective assistance of counsel with:

> (1) an affidavit describing in detail the agreement between the alien and his counsel regarding the litigation matters the attorney was retained to address; (2) evidence that the alien informed his counsel as to the alien's ineffective assistance allegations and afforded counsel an opportunity to respond; and (3) evidence that the alien had either filed a complaint with the appropriate disciplinary authority regarding the attorney's ethical or legal misfeasance, or a valid excuse for failing to lodge such a complaint.

Betouche v. Ashcroft, 357 F.3d 147, 149 (1st Cir. 2004). Mr. Ahlijah has provided no evidence that he met those requirements, and we therefore find that the BIA properly affirmed the Immigration Judge's decision that Mr. Ahlijah abandoned his application for cancellation of removal by failing to meet the filing deadline imposed by the Immigration Judge.

### III. Conclusion

For the reasons stated above, the BIA's order is **affirmed.**

-16-