**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 06-1265

VICTOR JOSUE CAMPOS-JAVIER,

Petitioner,

v.

ALBERTO GONZALES, United States Attorney General,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch and Howard, <u>Circuit Judges</u>,

and Young,[*] <u>District Judge</u>.

---

<u>Jorge Guttlein and Associates</u> on brief for petitioner.
<u>Peter Keisler</u>, Assistant Attorney General, Civil Division,
<u>Greg D. Mack</u>, Senior Litigation Counsel, and <u>Robbin K. Blaya</u>,
Attorney, Office of Immigration Litigation, United States
Department of Justice, on brief for respondent.

---

July 30, 2007

---

[*]Of the District of Massachusetts, sitting by designation.

**Per Curiam**. Victor Josue Campos-Javier seeks review of an order of the Board of Immigration Appeals ("BIA") rejecting his claim of ineffective assistance of counsel in the removal proceedings against him. We deny the petition.

Campos-Javier, a citizen of the Dominican Republic, entered the United States at San Juan, Puerto Rico without inspection in 1994. He soon married a United States citizen, who later filed a visa application, known as an "I-130," on his behalf in 1995. See 8 U.S.C. § 1154(a)(1)(A)(i) (2007); 8 C.F.R. § 204.2(a)(1) (2007). After this application had been approved, Campos-Javier sought to adjust his immigration status to that of a lawful permanent resident, filing an "I-485" application. See 8 U.S.C. § 1255(i) (2007); 8 C.F.R. § 245.2 (2006). But, in September 1998, while that application was pending, his wife withdrew the visa application, citing "domestic violence and because we have not lived together for a long time."[1]

Because he no longer had the visa, Campos-Javier's application for adjustment of status was denied on June 30, 2000. See 8 C.F.R. § 245.1(c)(4). The INS simultaneously commenced removal proceedings against him and took him into custody in Puerto Rico. Campos-Javier retained an attorney to represent him in the removal proceedings. At the initial hearing before the immigration

---

[1]The lawful status conferred by a visa can be revoked at any time for "good and sufficient cause." 8 U.S.C. § 1155 (2007).

judge ("IJ"), the attorney explained that Campos-Javier's wife, who was at that time pregnant with their second child, would be willing to file another I-130 on his behalf, but that more time was needed to explore possible avenues of relief from removal. The IJ continued proceedings for one week.

When they reconvened, Campos-Javier, acting through counsel, made a request for voluntary departure. The IJ granted it, giving Campos-Javier four months to leave the country. See 8 U.S.C. § 1229c(a)(1). His attorney has since explained that she did not pursue adjustment of status based on Campos-Javier's marriage to an American citizen because, at that time, he no longer had a visa "immediately available" as required for such relief. See 8 U.S.C. § 1255(i)(2)(B). The attorney recalls that she did ask the IJ--off the record--to continue the proceedings so that another I-130 visa application could be filed and processed, but that the IJ denied the request.[2] Campos-Javier's wife eventually filed another I-130 application on his behalf, but not until May 2003; it was approved in January 2005.

Campos-Javier did not comply with the voluntary departure order. Instead, more than three years later, he filed a motion to reopen the removal proceedings. The motion, prepared by a

---

[2]Though INS rules require off-the-record discussions at removal hearings to be summarized on-the-record, that did not occur here, at least according to the fragmentary transcript of the proceedings provided to us.

different lawyer, claimed that Campos-Javier's prior counsel had provided ineffective representation by failing to advise him of what he claimed was an opportunity to seek adjustment of status and by counseling him to seek voluntary departure instead. The IJ denied the motion to reopen, explaining that she was reluctant to second-guess the strategy of predecessor counsel. The IJ also ruled that, in any event, Campos-Javier had violated the voluntary departure order and therefore was barred from seeking adjustment of status for ten years. 8 U.S.C. § 1229c(d) (2007).

Campos-Javier appealed the denial of his motion to reopen to the BIA, which adopted and affirmed the IJ's decision. The BIA also ruled that Campos-Javier had not complied with its procedural requirements for prosecuting an ineffective assistance of counsel claim as set forth in In re Lozada, 19 I. & N. Dec. 637 (BIA), aff'd sub nom. Lozada v. INS, 857 F.2d 10 (1st Cir. 1988). Specifically, the BIA found that Campos-Javier had not informed his former attorney of the charge of ineffective assistance against her and provided her with an opportunity to respond.

Campos-Javier then filed a motion asking the BIA to reconsider its decision. He argued that his prior counsel was, in fact, informed of his ineffective assistance claim, because he had filed a complaint against her with the Disciplinary Committee of the United States District Court for the District of Puerto Rico, which, in turn, would have provided her with notice of the claim.

Campos-Javier also explained that he had not complied with the voluntary departure order because of the hardship that leaving the country would cause his wife and children.

The BIA denied the motion to reconsider, concluding that the motion failed to identify any error of law or fact in the BIA's previous decision. See 8 C.F.R. § 1003.2(b). Campos-Javier sought further relief by filing a petition for writ of habeas corpus in the United States District Court for the Southern District of New York. While the petition was pending, however, the REAL ID Act took effect, resulting in the transfer of the case to this court. REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106(c), 119 Stat. 231, 311. We treat the transferred habeas petition as a petition for review of a final order of removal under 8 U.S.C. § 1252. See, e.g., Grigous v. Gonzales, 460 F.3d 156, 159 (1st Cir. 2006).

Campos-Javier argues that the BIA should have granted his motion to reconsider because he "substantially complied" with the procedural requirements for making an ineffective assistance of counsel claim set forth in Lozada. We review the BIA's denial of a motion to reconsider for abuse of discretion. Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003).

The BIA refused to reconsider its decision that Campos-Javier had failed to satisfy one of the Lozada prerequisites to an ineffective assistance of counsel claim. Those prerequisites are:

(1) an affidavit describing in detail the agreement between the alien and his counsel regarding the litigation matters the attorney was retained to address; (2) evidence that the alien informed his counsel as to the alien's ineffective assistance allegations and afforded counsel an opportunity to respond; and (3) evidence that the alien had either filed a complaint with the appropriate disciplinary authority regarding the attorney's ethical or legal misfeasance, or a valid excuse for failing to lodge such a complaint.

Betouche v. Ashcroft, 357 F.3d 147, 149 (1st Cir. 2004) (quoting Lozada, 19 I. & N. Dec. at 639). We have recognized that the BIA adopted these requirements "to enable the efficient screening of frivolous, collusive or dilatory claims" of ineffective assistance. Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004). We have also recognized, then, that the BIA may hold a petitioner to the Lozada requirements, provided it does so in a non-arbitrary manner. See, e.g., Zeng v. Gonzales, 436 F.3d 26, 31 (1st Cir. 2006); Asaba v. Ashcroft, 377 F.3d 9, 10 (1st Cir. 2004); Betouche, 357 F.3d at 149 n.2; Saakian v. INS, 252 F.3d 21, 26 (1st Cir. 2001).

Here, the BIA rejected Campos-Javier's ineffective assistance claim under Lozada because he had not informed his former attorney of the allegations against her and allowed her the opportunity to respond to them. Campos-Javier argues, as he did in his motion to reconsider, that lodging those allegations with the Disciplinary Committee functionally satisfied the notice requirement, because the Committee itself would have provided the attorney with the opportunity to respond. But we expressly rejected this argument in Betouche, where we found that the

-6-

petitioner had not notified his lawyer within the contemplation of Lozada by filing a complaint against him with the Massachusetts Board of Bar Overseers. 357 F.3d at 151. There, we reasoned that the filing "simply established that [the petitioner] had notified the Board of Bar Overseers of his complaint, not that either he or the Board had notified [prior counsel]." Id.

The same reasoning applies here, where the record provides no indication that the Disciplinary Committee notified Campos-Javier's former attorney of his complaint. In fact, the Committee responded to the complaint by asking Campos-Javier to provide "the actual case number" so that it could "answer his question"--but he did not respond to the Committee until more than five months later, right after the BIA had already denied his motion to reopen because, inter alia, there was no evidence that he notified his prior counsel of his ineffective assistance claim as dictated by Lozada. Moreover, even when Campos-Javier moved for reconsideration of this ruling, he did not apprise the BIA of his response to the Committee. So we cannot consider the effect of that response, if any, on the question of whether the Committee in fact notified his previous attorney of the complaint; the response was never made part of the record before the BIA. See Asaba, 377 F.3d at 12; Betouche, 357 F.3d at 151.

Though Campos-Javier relies on the Committee's rule affording an attorney facing allegations of misconduct "the

-7-

opportunity to be heard," that rule applies only when such allegations, "if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court." D.P.R. R. 85.3(b). So the rule alone provides no basis for finding that the Committee actually notified prior counsel of Campos-Javier's complaint and, as we have noted, the record is devoid of any other materials supporting that conclusion.

Furthermore, as we held in Asaba, Lozada demands that counsel targeted by an ineffective assistance claim "be provided an opportunity to respond before filing the motion to reopen." 377 F.3d at 12 (emphasis added). In this way, "[t]he Lozada notice requirement provides a mechanism by which the [IJ] and the BIA 'may more accurately assess the merits of a petitioner's ineffective assistance claim.'" Id. (quoting Reyes v. Ashcroft, 358 F.3d 592, 599 (9th Cir. 2004)). That mechanism cannot function when the attorney does not learn of her former client's ineffective assistance claim until after the BIA has decided whether to grant reopening on that basis. Even if we could conclude that Campos-Javier's response to the Committee resulted in notice to his previous attorney, then, that notice still would have come too late to satisfy Lozada. See Asaba, 377 F.3d at 12.

Finally, Campos-Javier argues that he should not have been held to "strict adherence" to the notice requirement, because his failure to honor it was "beyond [his] control" in light of his

difficult family circumstances at the time he sought reopening. Though we have assumed that the "Lozada requirements might be excused where [the] alien demonstrated diligent (albeit deficient) efforts to comply," Betouche, 357 F.3d at 150 (citing Ontiveros-Lopez v. INS, 213 F.3d 1121, 1124-25 (9th Cir. 2000)), we cannot consider such an argument here, because Campos-Javier never presented it to the BIA. See, e.g., Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007). The petition for review is **denied.**

**So Ordered.**