# United States Court of Appeals
## For the First Circuit

No. 12-2261

JESUS VALDEZ LOPEZ,

Petitioner,

v.

ERIC HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Howard and Thompson, <u>Circuit Judges</u>.

<u>Martin D. Harris</u> for petitioner.
<u>Brendan P. Hogan</u>, Attorney, Office of Immigration Litigation,
with whom <u>Stuart F. Delery</u>, Acting Assistant Attorney General, and
<u>Song Park</u>, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief for respondent.

July 15, 2013

**LYNCH, Chief Judge**.  Petitioner Jesus Valdez-Lopez, a native and citizen of Mexico, seeks review of an October 11, 2012 Board of Immigration Appeals (BIA) decision denying his untimely motion to reopen his concluded removal proceedings, based on his claim of changed country conditions.  Because the BIA did not abuse its discretion in its decision, we deny his petition.

I.

A.  Original Removal Proceedings

In order to evaluate the denial of the motion to reopen, we first discuss the earlier removal proceedings, which ended in November of 2009.  Valdez-Lopez had lawfully entered the United States on June 23, 2001 as a visitor, with permission to remain for 30 days.  He overstayed.  Four years later, the Department of Homeland Security (DHS) began removal proceedings by filing a Notice to Appear with the Immigration Court, charging that Valdez-Lopez was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who was present in the United States without being admitted or paroled.  Upon the DHS amending the factual allegations contained in the Notice to Appear to charge Valdez-Lopez with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien who remained in the United States beyond July 22, 2001 without authorization, Valdez-Lopez admitted the amended allegations and

conceded removability.  He sought relief in the form of asylum and withholding of removal (WOR).[1]

Valdez-Lopez's merits hearing was held before an immigration judge (IJ) on April 3, 2008.  The IJ noted that Valdez-Lopez was ineligible for asylum, reasoning that Valdez-Lopez had neither established that his application for asylum was timely, see 8 U.S.C. § 1158(a)(2)(B) (requiring that application for asylum be filed within one year of entry into United States), nor established any basis as to the applicability of one of the exceptions to the timeliness requirement, see id. § 1158 (a)(2)(D).

As to WOR, Valdez-Lopez had testified that between 1984 and 1985 he and his brother engaged in various community improvement projects, including a project to pave their home community's roads.  A neighboring community invited Valdez-Lopez and his brother to discuss their project.  The members of that community discovered to their anger during that meeting that one Hector Martinez-Trejo[2] was overcharging them for a similar service; Martinez-Trejo had to flee the meeting.  Martinez-Trejo later accosted Valdez-Lopez and his brother on a public street, opening fire and killing the brother.  Valdez-Lopez complained to the local

---

[1]  Valdez-Lopez did not seek protection under the Convention Against Torture.

[2]  The parties dispute whether Valdez-Lopez's assailant is named "Martinez-Trejo" or "Martinez-Trujillo."  For purposes of this decision, that dispute is immaterial.

police, and provided testimony that resulted in the conviction and lengthy incarceration of Martinez-Trejo.

Fifteen years later, a newly released Martinez-Trejo again opened fire on Valdez-Lopez, this time at his family home. No one was injured. Valdez-Lopez again reported Martinez-Trejo to the police. This time, however, officials informed Valdez-Lopez that Martinez-Trejo was working for the police, and that other officers could testify as to his whereabouts at the time of the shooting. After Valdez-Lopez left the police station, Martinez-Trejo again confronted him, threatening to murder both him and his children as payback for the time Martinez-Trejo had spent in prison.

Valdez-Lopez immediately relocated his family to another region in Mexico, and left for the United States; his wife and children followed a few months later.

The IJ found that Valdez-Lopez's testimony was credible, but held that Valdez-Lopez was nonetheless ineligible for WOR. First, Valdez-Lopez had failed to establish a clear probability of future harm on account of a protected ground. While Valdez-Lopez had a genuine and reasonable fear, his was a fear of personal retaliation from Martinez-Trejo, and not one of persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. Second, Valdez-Lopez had provided no evidence of persecution at the hands of a

-4-

group that the government was unable or unwilling to control. While Valdez-Lopez had introduced evidence of police corruption and impunity in general, he had not shown that Martinez-Trejo was acting for the police so much as having a personal dispute with Valdez-Lopez.

Valdez-Lopez appealed the IJ's decision to the BIA, which dismissed the appeal on November 13, 2009. The BIA, confirming the IJ, also reasoned that Valdez-Lopez had "failed to show that he was targeted in the past or that there is a clear probability that he will be targeted in the future on account of a protected ground for withholding of removal." The BIA reasoned that "[a]lthough [Valdez-Lopez] may fear a general state of lawlessness in his home country, the law does not authorize withholding for someone who may be subject to such general violence." Valdez-Lopez did not seek judicial review of the BIA's 2009 decision. Rather, he did not leave, but more than two years later filed the motion at issue.

B. Motion to Reopen

On May 15, 2012, Valdez-Lopez filed a motion with the BIA to reopen his removal proceedings to reapply for asylum, WOR, and protection under the Convention Against Torture. Valdez-Lopez's motion was untimely, as it was not filed within 90 days of the BIA's final administrative decision. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Valdez-Lopez claimed, however, that the motion fell within the changed country conditions exception to the

-5-

applicable time limitation. 8 U.S.C. 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). In addition, Valdez-Lopez urged the BIA to reopen his proceedings sua sponte under 8 C.F.R. § 1003.2(a) on hardship grounds.

Valdez-Lopez introduced evidence concerning an incident involving his daughter who, despite the threats Valdez-Lopez had said were made to his family, had returned to Mexico for college. In an unsworn statement, Valdez-Lopez's daughter reported that she was a victim of auto theft at the hands of armed robbers. She claimed, without specificity, that the perpetrators "gave [her] the message that they are waiting for [her] father." Valdez-Lopez argued, for the first time, that this incident supported a fear of harm based on his membership in a "particular social group" consisting of himself and his immediate family.

In addition, Valdez-Lopez introduced evidence purporting to show an increase in gang violence and police corruption in Mexico. Valdez-Lopez's daughter's unsworn declaration also said that, in addition to having continuing ties with the police, Martinez-Trejo was now involved with organized crime. Thus, Valdez-Lopez argued, insofar as general lawlessness within Mexico had increased, so too had his personal risk of harm at the hands of a group the government was unwilling or unable to control.

On October 11, 2012, the BIA denied Valdez-Lopez's motion to reopen. The BIA rejected Valdez-Lopez's argument that changed

conditions in Mexico materially affected his case. It noted that the auto theft reports filed by Valdez-Lopez's daughter gave no indication that the incident was attributable to Martinez-Trejo or his previous threat against Valdez-Lopez. Even on the assumption that Valdez-Lopez's family constituted a "particular social group," evidence of his daughter's incident did not demonstrate that Martinez-Trejo now sought to harm Valdez-Lopez <u>on account of his membership in that group</u>. The same was true with respect to evidence of Martinez-Trejo's ties to organized crime. Rather, the BIA explained, the harm that Valdez-Lopez now feared was essentially the same as before, namely a fear of personal retaliation on account of Valdez-Lopez's role in Martinez-Trejo's incarceration. As to increased lawlessness in Mexico, the BIA reasoned that even if the evidence presented illustrated crimes, violence, and police corruption in that country, such conditions were not materially different from those that existed at the time of Valdez-Lopez's hearing in 2008. Indeed, Valdez-Lopez's submission of similar evidence at the time of that hearing made that clear.

Before this court, Valdez-Lopez argues generally that the BIA "commit[ted] errors of law" and that it "exercise[d] its judgment in an arbitrary, capricious, or irrational manner" in denying relief. More specifically, he says that the BIA's decision assigns insufficient weight to the evidence surrounding the

incident with his daughter, and that this was an abuse of discretion.[3]

## II.

Because of the "strong public interest in bringing litigation to a close . . . promptly," motions to reopen deportation proceedings are disfavored. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (alteration in original) (quoting INS v. Abudu, 485 U.S. 94, 107 (1988)) (internal quotation marks omitted). As a result, "the BIA enjoys a broad measure of latitude in passing upon such motions." Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir. 2007). We review the BIA's denial of a motion to reopen for abuse of discretion, reversing its decision "only if the BIA 'misread the law' or acted 'in an arbitrary or capricious fashion.'" Fesseha, 333 F.3d at 20 (quoting Carter v. INS, 90 F.3d 14, 17 (1st Cir. 1996)).

Motions to reopen must be filed within ninety days of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). This requirement may be relaxed "if a petitioner 'makes a convincing demonstration of changed conditions in his homeland.'" Tandayu v.

---

[3] The BIA declined also to reopen Valdez-Lopez's proceedings sua sponte, finding that the case did not present "exceptional circumstances" that would warrant the exercise of that discretion. In its brief, the Government argues that this court lacks jurisdiction to review the BIA's discretionary decision declining to reopen Valdez-Lopez's proceedings sua sponte. We agree, see, e.g., Matos-Santana v. Holder, 660 F.3d 91, 94 (1st Cir. 2011), but do not understand Valdez-Lopez to argue otherwise.

-8-

Mukasey, 521 F.3d 97, 100 (1st Cir. 2008) (quoting Raza v. Gonzalez, 484 F.3d 125, 127 (1st Cir. 2007)).  "The change in conditions 'must be material to the underlying substantive relief that the alien is seeking . . . and the evidence tendered in support thereof must have been unavailable during the prior proceedings.'"  Smith v. Holder, 627 F.3d 427, 434 (1st. Cir. 2010) (alteration in original) (quoting Raza, 484 F.3d at 127).  "Crucially, this evidence must demonstrate the intensification or deterioration of country conditions, not their mere continuation."  Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009).

The BIA was within its discretion in finding that none of the evidence introduced calls into question its and the IJ's earlier determination that Valdez-Lopez's fear is one of personal retaliation, not one of persecution on account of a protected ground.  Even if Martinez-Trejo now has ties to organized crime, the dispute with Valdez-Lopez reasonably could be thought a personal one.  Likewise, even assuming that Martinez-Trejo was involved in the incident involving Valdez-Lopez's daughter (which, as the BIA noted, is unclear), that incident would provide no new indication that the risk to Valdez-Lopez is on account of his membership in a "particular social group."  Indeed, in the original denial of relief, the IJ explicitly acknowledged the threats by Martinez-Trejo were against Valdez-Lopez and his children.

Valdez-Lopez's motion to reopen attempts to call into question the earlier decision. His opportunity to do that, however, is long past. See 8 U.S.C. § 1252(b)(1) (requiring petition for review of agency final order of removal to be filed within 30 days); Stone v. INS, 514 U.S. 386, 394, 405 (1995) (observing that time limits are "mandatory and jurisdictional," and that "deportation orders are to be reviewed in a timely fashion after issuance, irrespective of the later filing of a motion to reopen") (quoting Missouri v. Jenkins, 495 U.S. 33, 45 (1990) (internal quotation marks omitted)).

The BIA was also within its discretion in determining that the evidence introduced does not reveal increased lawlessness in Mexico sufficient to amount to changed country conditions, much less a change material to his claim. As the BIA correctly observed, the evidence introduced by Valdez-Lopez in 2008 is substantially similar to that at issue here. Cf. Tawadrous, 565 F.3d at 39 (determining that evidence of changed conditions "describe only the persistence of . . . tensions that . . . [the Court] had occasion to document before").

The petition is denied.

So ordered.